Lawrence MARCUS and Marc Kasky, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

AT & T CORP., Defendant.

Jeffrey A. MOSS, on behalf of himself and all others similarly situated, Plaintiff,

v.

AT & T CORP., Defendant.

Nos. 95 Civ. 9765 (MBM), 96 Civ. 0088 (MBM).

United States District Court, S.D. New York.

Aug. 21, 1996.

Michael C. Spencer, Lori G. Feldman, Elaine Simek Kusel, Milberg Weiss Bershad Hynes & Lerach, New York City, for Marcus Plaintiffs.

William S. Lerach, Alan M. Mansfield, Timothy J. Blood, Sheri Pym, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, for Marcus Plaintiffs.

Richard S. Schiffrin, Andrew L. Barroway, Marc A. Topaz, Schiffrin & Craig, Bala Cynwyd, PA, Alan M. Caplan, Philip Neumark, Bushnell, Caplan & Fielding, San Francisco, CA, for Marcus Plaintiffs.

Donald M. Lefari, Salis & Lefari, New York City, Robert W. Mills, Steven R. Rhoads, Linda Zubowski Bell, The Mills Firm, Greenbrae, CA, for Moss Plaintiffs.

Steven M. Bierman, Elizabeth M. Sacksteder, Sidley & Austin, New York City, Howard Spierer, AT & T Corp., Liberty Corner, NY, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiffs in the above-captioned actions are subscribers to AT & T's residential long-distance telephone services who allege that AT & T fraudulently conceals its billing prac-

tices. Plaintiffs in *Marcus v. AT & T*, 95 Civ. 9765, initially sued in New York State Supreme Court and AT & T removed that action here. 28 U.S.C. § 1441(a). Plaintiffs move to remand the action to state court. 28 U.S.C. § 1447(c). Plaintiffs in *Moss v. AT & T*, 96 Civ. 0088, initiated their action here. Defendant moves to dismiss both complaints for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). For the reasons that follow, the Marcus plaintiffs' motion to remand is denied, and defendant's motions to dismiss are granted.

## I.

### A. *The Complaints*

The gravamen of both complaints is that AT & T deceives its customers by "failing to disclose that residential service customers are billed per minute *rounded up to the next higher full minute* for long distance service." (Marcus Compl. ¶ 2) (emphasis in original) That billing practice does not appear on AT & T bills or on any other material sent to its customers. (*Id.*) So, for example, a telephone conversation that lasts one minute and one second will be billed as a two-minute call, but the customer will not be informed of the actual duration of the call. "The bill will state only that the customer's call was for two minutes and the customer will be billed accordingly." (*Id.* ¶ 3) Plaintiffs acknowledge that AT & T has disclosed its practice of rounding up in tariffs filed with the Federal Communications Commission ("FCC") but, plaintiffs contend, "AT & T makes no effort, in its advertising, marketing, or customer bills, or in any other manner, to inform customers that its billing practice of rounding up may be discovered by reviewing tariffs it may have filed with the FCC." (Moss Compl. ¶ 20) That failure to disclose, combined with AT & T's advertising pledge of "True Savings," plaintiffs allege, damaged them.

The *Marcus* plaintiffs contend that AT & T's conduct constitutes: (1) deceptive acts and practices, in violation of N.Y.Gen.Bus.L. § 349(a), (2) false advertising, in violation of N.Y.Gen.Bus.L. § 350, (3) fraud and deceit, (4) negligent misrepresentation, (5) breach of warranty, and (6) unjust enrichment. Plain-

tiffs seek class certification, compensatory damages, punitive damages, an injunction against the allegedly deceptive practices, disgorgement of ill-gotten gains and/or a constructive trust over them, fees, costs and interest.

The *Moss* plaintiffs assert claims of: (1) fraud and deceit under New York law and federal common law, (2) negligent misrepresentation, (3) violation of N.Y.Gen.Bus.L. §§ 349–50, (4) false advertising, and (5) unjust enrichment. Those claims differ from those of the *Marcus* plaintiffs, in that the *Moss* plaintiffs assert claims arising under federal common law, but no breach of warranty. The *Moss* plaintiffs seek damages, disgorgement, and a permanent injunction ordering AT & T to: (1) state the actual length of every call on all bills, and (2) admit in all advertising for 12 months that it has billed customers for service never provided.

### B. *The Tariffs*

■ AT & T acknowledges that it rounds up the length of residential telephone calls, that it bills customers for the rounded up figure, and that its bills do not disclose the actual length of the call. However, AT & T explains that its billing practices are disclosed in its tariffs filed with the FCC. Those tariffs state in pertinent part:

**A. Initial Period**—Initial Period is the initial rate increment of a [long-distance] call. The specific length of the initial period is indicated on the applicable rate schedule.

**B. Additional Minute**—Additional Minute is the rate element used to bill for the chargeable time when a [long-distance] call continues beyond the initial period. Additional Minute begins when the initial period ends (e.g., with the second minute of a call for which the initial period is one minute). Additional Minute rates apply to each additional minute, or any fraction thereof, that chargeable time continues beyond the initial period.

(Peterson Aff. Exs. A–D) (emphasis in original) Because those tariffs are public documents that AT & T is required to file with the FCC, the court may take judicial notice

of them pursuant to Fed.R.Evid. 201, and as a result may consider them on a Rule 12(b)(6) motion even though not included in, or attached to the complaint. *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773–74 (2d Cir.1991) (permitting court to rely on public documents filed with the SEC).

## II.

■ Removal is appropriate only when a complaint filed in state court properly could have been filed in federal court. 28 U.S.C. § 1441(a). A complaint properly may be filed in federal court only if there is subject matter jurisdiction. Here, defendant contends that federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331, the federal question statute. That section provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1994). The laws of the United States include federal common law. *Illinois v. City of Milwaukee,* 406 U.S. 91, 99, 92 S.Ct. 1385, 1390, 31 L.Ed.2d 712 (1972) (holding that a claim arising under federal common law may be removed to federal court).

■ It is well-settled that the plaintiff is the "master of the complaint," *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411–12, 57 L.Ed. 716 (1913), and that a claim for relief arises under federal law only when a substantial federal question is presented on the face of the plaintiff's "well-pleaded complaint." *Gully v. First Nat'l Bank,* 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936). Accordingly, a plaintiff may preclude removal by electing not to plead an optional federal cause of action. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987). Likewise, a defendant may not usurp control of a plaintiff's case simply by asserting a federal defense. *Id.* at 393, 107 S.Ct. at 2430.

■ But the well-pleaded complaint rule does not permit a plaintiff to evade removal by artfully pleading as a state claim what actually is a claim arising under federal law. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 22, 103 S.Ct.

2841, 2852–53, 77 L.Ed.2d 420 (1983); *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981); *Derrico v. Sheehan Emergency Hosp.,* 844 F.2d 22, 27 (2d Cir. 1988). The Second Circuit has explained:

> If the only remedy available to plaintiff is federal, because of preemption or otherwise, and the state court necessarily must look to federal law in passing on this claim, the case is removable regardless of what is in the pleading.... The classic application of the artful pleading doctrine occurs in the context of federal preemption of state law.

*Travelers Indemnity Co. v. Sarkisian,* 794 F.2d 754, 758 (2d Cir.) (quoting 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3722, at 273–75 (2d ed. 1985)), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986).

■ Defendant contends that plaintiffs' claims necessarily arise under the Communications Act of 1934 and the federal common law developed thereunder. That Act aims to regulate:

> interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges.

47 U.S.C. § 151 (1994). The Act applies to "all interstate and foreign communications by wire or radio." *Id.* § 152.

■ The Act requires common carriers such as AT & T to "file with the [FCC] and print and keep open for public inspection schedules showing all charges ... and showing the classifications, practices, and regulations affecting such charges." 47 U.S.C. § 203(a) (1994); *see MCI Telecommunications Corp. v. American Tel. & Tel. Co.,* 512 U.S. 218, ——, 114 S.Ct. 2223, 2231, 129 L.Ed.2d 182 (1994) (describing § 203 as "the heart of the common-carrier section of the Communications Act."). Those schedules "shall contain such other information, and be printed in such form, and be posted and kept

open for public inspection in such places, as the [FCC] may by regulation require," and are subject to FCC regulation and approval. *Id.* § 203(b). No carrier shall:

(1) charge, demand, collect or receive a greater or less or different compensation for such communication, or for any service in connection therewith ... or (2) refund or remit by any means or device any portion of the charges so specified, or (3) extend to any person any privileges or facilities in such communication, or employ or enforce any classifications, regulations, or practices affecting such charges, except as specified in such schedule.

*Id.* § 203(c). Deviation from the filed rate may result in imposition by the FCC of monetary and injunctive penalties. *Id.* §§ 203(e), 205(a)–(b). Those filing provisions of the Communications Act, the source of the "filed rate doctrine," *see infra* pp. 1168–70, have been interpreted strictly by the courts; there are no exceptions to a carrier's obligation to collect the filed tariff.

The Act provides further that any person damaged by a common carrier may:

make complaint to the [FCC] ... or ... bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

*Id.* § 207. So, for example, a customer injured by a carrier's failure to file its rates, or a customer injured by a carrier's failure to charge the filed rate, may sue the carrier in federal court. *See, e.g., Bruss Co. v. Allnet Communication Servs.,* 606 F.Supp. 401, 408–09 (N.D.Ill.1985) (permitting claims alleging that carrier charged rates higher than the filed rates). The statute states also that nothing contained therein:

shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

*Id.* § 414.

The Second Circuit twice has considered the preemptive effect of the Communications Act. In *Ivy Broadcasting Co. v. American Tel. & Tel. Co.,* 391 F.2d 486 (2d Cir.1968), a radio station had ordered telephone service from defendant in connection with the station's broadcast of college football games and political conventions, and contended that defendant was grossly negligent in providing those services. The station owner sued AT & T for negligence and breach of contract in federal court, and the court dismissed the action for lack of subject matter jurisdiction.

The Second Circuit reversed, holding that plaintiff's claims arose under federal common law and that jurisdiction existed under 28 U.S.C. § 1331. The Court noted that the Communications Act was "comprehensive legislation regulating common carriers engaged in interstate telegraph and telephone transmission," and that the Supreme Court on several occasions had applied federal law to claims governed by a statute analogous to the Communications Act, the Interstate Commerce Act. 391 F.2d at 490 (citing *Postal Tel.–Cable Co. v. Warren–Godwin Lumber Co.,* 251 U.S. 27, 30–31, 40 S.Ct. 69, 70–71, 64 L.Ed. 118 (1919) (holding that federal law governed the validity of a contract limiting the carrier's liability for negligence with respect to unrepeated messages); *Western Union Tel. Co. v. Boegli,* 251 U.S. 315, 316–17, 40 S.Ct. 167, 167–68, 64 L.Ed. 281 (1920) (invalidating a state penalty for a carrier's failure to deliver promptly an interstate telegram); and *Western Union Tel. Co. v. Speight,* 254 U.S. 17, 18–19, 41 S.Ct. 11, 11, 65 L.Ed. 104 (1920) (applying federal rule to negligence claim arising from interstate telegram)). Relying on its review of the Communications Act and the cited Supreme Court cases, the Second Circuit held that:

questions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communications service are to be governed solely by federal law and ... the states are precluded from acting in this area. Where neither the Communications Act itself nor the tariffs filed pursuant to the Act deals with a particular question, the courts are to apply a uniform rule of federal common law.

391 F.2d at 491. The Court explained further that the congressional purpose of equality of rates could "be achieved only if a uniform federal law governs as to the standards of service which the carrier must provide and as to the extent of liability for failure to comply with such standards." *Id.* Because federal common law controlled plaintiff's negligence claims, the Court held that federal subject-matter jurisdiction existed under 28 U.S.C. § 1331. *Id.* at 492–93.

In *Nordlicht v. New York Tel. Co.,* 799 F.2d 859 (2d Cir.1986), *cert. denied,* 479 U.S. 1055, 107 S.Ct. 929, 93 L.Ed.2d 981 (1987), the Second Circuit extended the preemptive effect of the Communications Act to claims of fraud and money had and received. There, a customer sued New York Telephone in state court to recover the difference in value between Canadian and American prices for telephone calls originating in Canada. The plaintiff alleged that the Canadian telephone company billed defendant in Canadian dollars, and that defendant billed plaintiff in the stronger American currency and pocketed the difference. New York Telephone removed the action to federal court on federal question grounds. Judge Haight denied plaintiff's motion to remand and dismissed the action. 617 F.Supp. 220 (S.D.N.Y.1985).

The Second Circuit affirmed. The Court held first that because plaintiff did not allege a violation of a specific provision of the Communications Act, the jurisdictional section of the Act, § 207, did not provide a basis for removal. 799 F.2d at 862. Citing *Ivy,* the Court then explained that "due to the comprehensive nature of Congress's regulation of telephone carriers, federal law preempted state law with regard to certain classes of claims and supplanted it with federal common law." *Id.* As a result, the Court held that Nordlicht's claims of fraud and money had and received arose under federal common law and that 28 U.S.C. § 1331 provided a jurisdictional basis for removal. *Id.; see also Gelb v. American Tel. & Tel. Co.,* 813 F.Supp. 1022, 1024–25 (S.D.N.Y.1993) (holding that a claim for non-disclosure of AT & T's billing practices was governed by federal common law).

The language of the statute, the filed rate doctrine developed thereunder, and *Ivy* and *Nordlicht* reveal that plaintiffs' claims for damages, no matter how artfully pleaded, arise under federal law. Plaintiffs challenge on fraud-based grounds the rates charged by AT & T, and seek a refund of part of those rates in contravention of § 203(c). This court's construction of the Communications Act and the filed rate doctrine will determine the outcome of plaintiffs' claims. Accordingly, plaintiffs' common-law claims arise under federal law, there is subject matter jurisdiction, and the *Marcus* complaint properly was removed.

Plaintiffs argue that *Ivy* and *Nordlicht* have been superseded by the Supreme Court's recent preemption rulings and thus are not controlling here. In particular, plaintiffs rely on *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), in which the Supreme Court discussed the doctrine of complete preemption, which applies when Congress has "so completely preempt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." 481 U.S. at 63, 107 S.Ct. at 1546. When an area is "completely preempted," any claim within that area "arises under" federal law and is removable to federal court, even if the complaint itself makes no mention of federal law. *Id.* Complete preemption is distinct from the artful pleading doctrine, and provides an alternatively sufficient basis for removal.

In *Metropolitan Life* the Court held that an employee's common-law contract and tort claims arising from his employer's termination of disability benefits under an ERISA-covered plan were completely preempted by § 502 of ERISA, by necessity arose under federal law, and thus were removable to federal court. 481 U.S. at 63–64, 107 S.Ct. at 1546–47. At the same time, the Court cautioned that courts ordinarily should be:

> reluctant to find that extraordinary preemptive power ... that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.

*Id.* at 65, 107 S.Ct. at 1547; *see also Avco Corp. v. Aero Lodge, No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (holding that § 301 of the Labor Management Relations Act completely preempts the field of labor relations). Only when Congress clearly has manifested its intent to completely preempt state law, the Court held, is complete-preemption removal proper. *Id.* at 67, 107 S.Ct. at 1548; *see also Medtronic, Inc. v. Lohr,* —— U.S. ——, ——, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996) ("because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action.").

Plaintiffs contend that the savings clause of the Communications Act, 47 U.S.C. § 414, which preserves "remedies now existing at common law or by statute," manifests Congress' intent *not* to preempt completely state regulation of interstate communications. Plaintiffs argue further that, in light of the holding of *Metropolitan Life,* the Second Circuit's failure to consider the savings clause in *Ivy* and *Nordlicht* limits the precedential value of those cases.

■■■ The savings clause of the Communications Act must be read to preserve only state claims that address obligations different from those created by the Communications Act. *See, e.g., Comtronics, Inc. v. Puerto Rico Tel. Co.,* 553 F.2d 701, 707 n. 6 (1st Cir.1977) ("we read § 414 as preserving causes of action for breaches of duties distinguishable from those created under the Act."); *Ashley v. Southwestern Bell Tel. Co.,* 410 F.Supp. 1389 (W.D.Tex.1976) (holding that state-law action for invasion of privacy not preempted by the Communications Act). In particular, that clause cannot plausibly be read to preserve remedies that conflict with the strict filing and charging duties imposed by the federal statute, because such a reading of the clause would eviscerate those duties. *See Kellerman v. MCI Telecommunications Corp.,* 112 Ill.2d 428, 442, 98 Ill. Dec. 24, 30, 493 N.E.2d 1045, 1051 ("it is implausible to think that section 414 of the Act preserved all [s]tate-law remedies affecting interstate telephone carriers no matter how repugnant those [s]tate laws are to the purposes and objectives of Congress."), *cert. denied,* 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986). In other words, the Act cannot be read "to destroy itself." *Texas & Pacific R.R. Co. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 446, 27 S.Ct. 350, 357–58, 51 L.Ed. 553 (1907) (interpreting the Interstate Commerce Act), quoted in *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 299, 96 S.Ct. 1978, 1984, 48 L.Ed.2d 643 (1976) (interpreting the Federal Aviation Act). To the extent *Ivy* and *Nordlicht* hold that the Communications Act preempts common-law obligations inconsistent with the statute, those cases reflect an interpretation that has not been overruled and is controlling here.

■■■ It may be that because of the Second Circuit's failure to consider the savings clause, and the holding of *Metropolitan Life,* the sweeping language used in *Ivy* and quoted in *Nordlicht* —

> questions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communications service are to be governed *solely* by federal law ... the states are precluded from acting in this area—

is overbroad. *Ivy,* 391 F.2d at 491 (emphasis added). The states are not precluded from acting in the area of interstate communications, because Congress explicitly preserved their right so to act. Thus, the Communications Act would not support removal based on complete preemption. *See, e.g., Weinberg v. Sprint Corp.,* 165 F.R.D. 431, 439–40 (D.N.J.1996) (holding that Communications Act does not completely preempt the field); *Esquivel v. Southwestern Bell Mobile Sys.,* 920 F.Supp. 713, 716 (S.D.Tex.1996) (same); *American Inmate Phone Sys. v. U.S. Sprint Communications Co. Ltd. Partnership,* 787 F.Supp. 852, 858 (N.D.Ill.1992) (same). *But see Vermont v. Oncor Communications, Inc.,* 166 F.R.D. 313, 317–18 (D.Vt.1996) (holding that "fraud claims asserted against telephone companies, whether or not they specifically involve billing charges," are completely preempted). But here, because plaintiffs' common-law claims "arise under" federal common law, it is unnecessary to consider whether jurisdiction exists also under the doctrine of complete preemption. According-

ly, neither the savings clause nor *Metropolitan Life* requires remand.

■ For the above reasons, removal of plaintiffs' claims for damages was proper. Supplemental jurisdiction exists for any claims that do not arise under federal law because all claims asserted arise from the same set of operative facts. 28 U.S.C. § 1367(a) (1994).

### III.

■ Defendant contends that the filed rate doctrine bars all claims raised by the *Marcus* and *Moss* complaints. That doctrine, known also as the filed tariff doctrine, derives from the tariff-filing requirements of the Communications Act, *supra* pp. 1165–66, and the analogous requirements of the Interstate Commerce Act of 1910 ("ICA"), 49 U.S.C. § 10101 *et seq.*, which served as a model for the Communications Act. *MCI,* 512 U.S. at ——, 114 S.Ct. at 2231.[1] Put simply, the filed rate doctrine forbids a regulated entity from charging rates "for its services other than those properly filed with the appropriate federal regulatory authority." *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981) ("*Arkla*"). The doctrine creates "strict filed rates requirements and ... forbid[s] equitable defenses to collection of the filed tariff." *Maislin Indus., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 127, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990) (invalidating an ICC policy that relieved a shipper of the obligation to pay the filed rate when the shipper and carrier had privately negotiated a lower rate). That means that the filed rate governs the legal relationship between carrier and subscriber, and "[t]he rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier." *Keogh v. Chicago & N.W.*

*Ry.,* 260 U.S. 156, 163, 43 S.Ct. 47, 49, 67 L.Ed. 183 (1922) (dismissing claims of conspiracy to fix rates); *see also Square D Co. v. Niagara Frontier Tariff Bureau,* 476 U.S. 409, 417, 106 S.Ct. 1922, 1927, 90 L.Ed.2d 413 (1986) (declining to overrule *Keogh* and holding that the filed rate doctrine barred antitrust action alleging rates fixed pursuant to an illegal agreement). Moreover, the regulatory agency has no power to alter retroactively a properly filed rate. *Arkla,* 453 at 578, 101 S.Ct. at 2930–31.

■ Because the agency rate-making procedures and the resulting tariffs are public documents, the consumer's "knowledge of the lawful rate is conclusively presumed," *Kansas City S.R. Co. v. Carl,* 227 U.S. 639, 653, 33 S.Ct. 391, 395, 57 L.Ed. 683 (1913), and "[i]gnorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed." *Louisville & Nashville R.R. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915) (holding that a passenger who bought a train ticket at a misquoted rate had no defense to payment of the filed tariff). The filed rate doctrine trumps contract defenses: even a customer who has negotiated with the carrier for a lower rate must pay the filed rate. *Armour Packing Co. v. United States,* 209 U.S. 56, 81, 28 S.Ct. 428, 435, 52 L.Ed. 681 (1908). Permitting parties to contract for a reasonable rate would subvert the FCC's ability to judge in every case the reasonableness of the rate. *Arkla,* 453 U.S. at 582, 101 S.Ct. at 2932–33.

■ The filed rate doctrine prevails also over claims of fraud. In *Wegoland, Ltd. v. NYNEX Corp.,* 27 F.3d 17, 19 (2d Cir.1994), plaintiffs alleged that defendants had provided the " 'regulatory agencies and consumers misleading financial information to support

---

1. The ICA "regulates interstate transportation by common carriers to ensure that rates are both reasonable and nondiscriminatory." *Maislin Indus., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 119, 110 S.Ct. 2759, 2762, 111 L.Ed.2d 94 (1990), and requires a motor common carrier to "publish and file with the Commission tariffs containing the rates for transportation it may provide." 49 U.S.C. § 10762(a)(1) (1994). A motor common carrier may not:

charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility that affects the value of that transportation or service, or another device.

49 U.S.C. § 10761(a). A carrier must "publish and file with the [ICC] tariffs" containing its rates, and must keep those tariffs "open for public inspection." *Id.* § 10762(a)(1)–(2).

the inflated rates they requested.'" *Id.* at 18 (quoting *Wegoland, Ltd. v. NYNEX Corp.,* 806 F.Supp. 1112, 1113 (S.D.N.Y.1992)). Explaining· that the twin goals of the filed rate doctrine are non-discrimination among ratepayers and exclusion of the courts from the ratemaking process, the Second Circuit reasoned that the task of "ferreting out fraud in the rate-making process" would enmesh the court impermissibly in that process, would subvert the regulatory agency's authority and "undermine the stability of the system." *Id.* at 21. Accordingly, the Court refused to create a fraud exception to the filed rate doctrine. *Id.* at 22; *see also Taffet v. Southern Co.,* 967 F.2d 1483, 1488–90 (11th Cir.) (*en banc*) (filed rate barred RICO action because customers had suffered no legally cognizable injury), *cert. denied,* 506 U.S. 1021, 113 S.Ct. 657, 121 L.Ed.2d 583 (1992); *H.J. Inc. v. Northwestern Bell. Tel. Co.,* 954 F.2d 485, 494 (8th Cir.), (filed rate doctrine barred RICO claims for fraud on agency), *cert. denied,* 504 U.S. 957, 112 S.Ct. 2306, 119 L.Ed.2d 228 (1992); *Marco Supply Co. v. AT & T Communications, Inc.,* 875 F.2d 434, 436 (4th Cir.1989) (filed rate doctrine barred claim of price misrepresentation); *Transportation Data Interchange, Inc. v. AT & T,* 920 F.Supp. 86, 89 (D.Md.1996) (relying on *Marco, supra,* in holding that filed rate doctrine bars claims for breach of contract and fraud); *MCI Telecommunications Corp. v. Graphnet, Inc.,* 881 F.Supp. 126, 132 (D.N.J.1995) (holding that filed rate doctrine precludes claims for fraudulent inducement and breach of contract).

That a common carrier may charge no more and no less than its filed rate necessarily means that a subscriber may pay no more and no less than the filed rate, regardless of equitable circumstances suggesting otherwise. It follows that any subscriber who pays the filed rate has suffered no legally cognizable injury. Here, AT & T filed its rates based on rounding up with the FCC, and plaintiffs paid the rates so filed. That plaintiffs may have been misled by AT & T's bills, or its advertisements of "True Savings," does not mitigate the effect of the filed rate doctrine. Accordingly, plaintiffs' claims for damages are barred by the filed rate doctrine.

Plaintiffs assert that their claims do not engage the filed rate doctrine because they attack AT & T's non-disclosure of its residential long-distance rates rather than the reasonableness of those rates. In essence, plaintiffs challenge the application of AT & T's rates to them in light of AT & T's billing and advertising practices, as opposed to the reasonableness of the rates absent any allegedly misleading conduct. But Supreme Court case law illustrates that the filed rate doctrine applies as stringently to claims challenging the individual application of the filed rate, as it does to claims challenging the general integrity of that rate. *See, e.g., Maxwell,* 237 U.S. at 97, 35 S.Ct. at 495 (filed rate applies even to passenger who had been quoted a lower rate); *Armour Packing,* 209 U.S. at 81, 28 S.Ct. at 435 (filed rate applies even to customer who contracted for a lower rate). Conversely, the filed rate doctrine applies as stringently to claims challenging the universal application of the filed rate as it does to claims challenging the individual application of the rate. Claims challenging universal application seek retroactive alteration of the filed rate, a remedy that neither the FCC nor· the courts may provide. The statute requires the carrier to charge all customers the same rate and yields to no equitable defenses. "Stripped of its semantic cover," plaintiffs' claims "thus stand revealed as flatly inconsistent with the statutory scheme as a whole." *Maislin,* 497 U.S. at 131, 110 S.Ct. at 2768.

Plaintiffs attempt to avoid *Wegoland* also by arguing that they allege a fraud on the public, rather than a fraud on the regulatory agency. But again, that distinction is immaterial, because the two types of allegations implicate equally the filed rate doctrine. As long as the carrier has charged and the plaintiff has paid the filed rate, what bars a claim is not the harm alleged, but the impact of the remedy sought. Any remedy that requires a refund of a portion of the filed rate—whether an award of damages for fraud on an agency or an award of damages for fraud on consumers—is barred.

Plaintiffs rely also on *Gelb,* 813 F.Supp. 1022. There, holders of AT & T's calling

cards alleged that AT & T fraudulently had concealed the cost of using those cards. Those plaintiffs asserted claims of fraud, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and deceptive acts and practices and false advertising in violation of N.Y.Gen.Bus.L. §§ 349–50 and New York common law. *Id.* at 1023. In considering whether plaintiffs' claims of fraud were barred by the filed rate doctrine, the Court held that:

> Because the fraudulent conduct alleged involves universal fraud and concealment of rates as to all cardholders by defendant AT & T (rather than fraud directed at a particular customer) and because the claim does not implicate in any manner the reasonableness of the filed rate, this Court rules that the filed rate doctrine does not apply.

*Id.* at 1032. The *Gelb* Court held that the filed rate doctrine did not bar plaintiff's claim for declaratory or injunctive relief, but reserved judgment as to whether an award of damages impermissibly would involve the court in the ratemaking process. *Id.* at 1032–33.

*Gelb* does not support plaintiffs' claim for damages, because it left open the question of whether damages would be barred by the filed rate doctrine. The case ultimately settled and that question never was resolved. To the extent *Gelb* does bear on the facts presented here, I respectfully decline to follow it, because I conclude that plaintiffs' claims for damages, even absent a challenge to the reasonableness of AT & T's rates, offend the filed rate doctrine and therefore are barred.

Just as plaintiffs' claims violate the letter of the filed rate doctrine, so too they violate the doctrine's policy. To require AT & T to pay damages here would mean that these plaintiffs, because of their reliance on AT & T's non-disclosure, are entitled to a reduced rate for AT & T services. Non-party subscribers to AT & T's residential long distance service necessarily would pay a higher rate. That disparity cannot be squared with the filed rate doctrine's mandate of equal rates for equal service.

In response, plaintiffs argue that there will be no discrimination here because they seek to represent a class. But even a class action litigation—were plaintiffs' class to be certified—would lead to rate discrimination. Certification of a class pursuant to Fed. R.Civ.P. 23(b)(3) permits class members to opt out of the litigation. A class member's exercise of that right likely would result in the application of different rates to the class and the opting out members. To hold that the opting out members' actions were barred by the filed rate doctrine would force all members of the class to litigate together, in contravention of the opt-out provision of Fed. R.Civ.P. 23(b)(3).

 To be sure, the opt-out provision does not apply to class actions certified under Fed.R.Civ.P. 23(b)(1) or (b)(2), which bind all members of the class. But in this case the very elements of the claim could compel discrimination. These plaintiffs allege common-law fraud and negligent misrepresentation. Both claims require proof of reliance, *see infra* pp. 1171–72, and in a class action, the reliance of each class member must be proved. *See, e.g., In re Crazy Eddie Secs. Litig.*, 802 F.Supp. 804, 811–12 (E.D.N.Y. 1992). Class members able to prove reliance on AT & T's alleged concealment or its advertisement of "True Savings" would recover damages, while class members unable to do so, either because they were aware of the filed tariff or because they did not take the phrase "True Savings" literally, could not so recover. That result would thwart the Communication Act's goal of uniform nationwide rates.

Further, "the class action nature of the proceeding in no way affects the important concerns of agency authority, justiciability and institutional competence" implicated by the filed rate doctrine and "tends to frustrate these legitimate interests and might end up costing consumers even more in litigation expenses." *Wegoland*, 27 F.3d at 22; *see In re Empire Blue Cross & Blue Shield Customer Litig.*, 164 Misc.2d 350, 622 N.Y.S.2d 843, 848 (Sup.Ct. New York County 1994), *aff'd,* —— A.D.2d ——, 640 N.Y.S.2d 102 (1st Dep't 1996). For that reason, both the Supreme Court and the Second Circuit have

declined to craft a class-action exception to the filed rate doctrine. *Square D,* 476 U.S. at 423, 106 S.Ct. at 1930 ("The emergence of subsequent procedural and judicial developments [including the class action] does not minimize *Keogh*'s role as an essential element of the settled legal context in which Congress has repeatedly acted in this area."); *Wegoland,* 27 F.3d at 22.

Here too, calculation of the damages plaintiffs seek necessarily would require this court to determine a reasonable rate for AT & T's residential long-distance service to cure the allegedly fraudulent non-disclosure. Because the filed rate doctrine confers on the FCC exclusive authority to make that determination, plaintiffs' claims for damages must be dismissed.

## IV.

■ Plaintiffs' request for an injunction requiring AT & T to disclose its billing practices in materials other than the tariffs is not barred by the filed rate doctrine, because that type of relief would have no impact on the tariff charged. It would not require AT & T to charge more or less than the filed rate, nor would it permit a customer to pay more or less than the filed rate. Nor would plaintiffs' claims for injunctive relief to remedy AT & T's non-disclosure be preempted by the Communications Act, which requires common carriers to disclose their rates in the filed tariffs only. The Act does not prohibit a state from requiring common carriers to disclose their rates elsewhere, and any such state obligation would not frustrate Act's purposes of uniformity and agency ratemaking. *See supra* p. 1168.

■ A party seeking an injunction from a federal court must show that it will suffer irreparable harm and that legal remedies are inadequate to redress that harm. *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–07, 79 S.Ct. 948, 954–55, 3 L.Ed.2d 988 (1959). Plaintiffs have pointed to no requirement obliging a common carrier to disclose its billing practices anywhere other than in the tariffs, and no law that requires a common carrier to disclose in its bills the actual length of the service provided.

■ To state a claim for fraud under either federal law or New York common law, a plaintiff must allege: (1) a material false representation or omission of existing fact, (2) intent to defraud, (3) reasonable reliance, and (4) damages. *Pence v. United States,* 316 U.S. 332, 338, 62 S.Ct. 1080, 1083–84, 86 L.Ed. 1510 (1941) (federal common law); *Turtur v. Rothschild Registry Int'l, Inc.,* 26 F.3d 304, 310 (2d Cir.1994) (New York common law).

■ Relatedly, the elements of a claim for negligent misrepresentation are: (1) carelessness in imparting words, (2) to one whom the speaker is bound by some relation of duty or care, (3) who is expected to rely, (4) upon which plaintiff acted or failed to act, (5) to plaintiff's damage. *Mallis v. Bankers Trust Co.,* 615 F.2d 68, 82 (2d Cir.1980), *cert. denied,* 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981) (New York and federal common law); *In re JWP Inc. Secs. Litig.,* 928 F.Supp. 1239, 1253 (S.D.N.Y.1996) (New York common law).

■ Plaintiffs' claims for both fraud and negligent misrepresentation require proof of damages. But plaintiffs here have suffered no legally cognizable damages because they paid the tariff rate. Equitable redress is not warranted, because there is nothing to redress.

■ The *Marcus* plaintiffs assert also a claim for breach of warranty. Liability on that theory arises only when "persons or property are damaged because of a product's failure to live up to an express or implied representation by the manufacturer or other supplier." *Tinnerholm v. Parke Davis & Co.,* 285 F.Supp. 432, 440 (S.D.N.Y.1968), *aff'd,* 411 F.2d 48 (2d Cir.1969). An express warranty arises when the seller affirmatively represents a fact concerning the goods or services it sells. *Id.* An implied warranty arises in the absence of an express representation, and is imposed by operation of law. *Id.* Plaintiffs' claim for breach of warranty suffers from the same defect as their claims for fraud and negligent representation; even assuming that AT & T's bills and advertisements create an actionable express warranty, plaintiffs' claim is insufficient because plain-

tiffs have suffered no damages as a result of any alleged breach. Plaintiffs paid only the rates they were legally obliged to pay.

 A claim for unjust enrichment or imposition of a constructive trust is based on:

an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex ae quo et bono* belongs to another.

*In re Chateaugay Corp.*, 10 F.3d 944, 957–58 (2d Cir.1993) (quoting *Miller v. Schloss,* 218 N.Y. 400, 407, 113 N.E. 337 (1916)). Here, plaintiffs, by paying the filed rate, have conferred no benefit on AT & T to which AT & T is not entitled. Likewise, it violates no principle of equity or good conscience to allow AT & T to keep the money plaintiffs are legally obligated to pay.

Plaintiffs allege also that AT & T has violated two sections of New York's Consumer Protection Act. Section 349 of that Act makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y.Gen.Bus.L. § 349(a) (McKinney 1988). That section also establishes that,

it shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States....

*Id.* § 349(d).

Section 350 of New York's General Business Law makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Id.* § 350. False advertising is advertising that is:

misleading in a material respect, ... [including] the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity ... to which the advertising relates under the conditions prescribed in

said advertisement, or under such conditions as are customary or usual.

N.Y.Gen.Bus.L. § 350–a (McKinney 1988 & Supp.1996). In any action brought pursuant to § 350,

it shall be a complete defense that the advertisement is subject to and complies with the rules and regulations of, and the statutes administered by the Federal Trade Commission or any official department, division, commission or agency of the state of New York.

*Id.* § 350–d. Courts have construed § 350–d to be congruent with § 349(d) and also to cover regulations promulgated by federal agencies other than the FTC. *American Home Prods. Corp. v. Johnson & Johnson,* 672 F.Supp. 135, 144 (S.D.N.Y.1987) (compliance with FDA regulations constitutes a complete defense); *Mendelson v. Trans World Airlines, Inc.,* 120 Misc.2d 423, 466 N.Y.S.2d 168, 171 (Sup.Ct. Queens County 1983) (compliance with Civil Aeronautics Board regulations constitutes a complete defense).

 To the extent plaintiffs challenge AT & T's billing practices, those claims are barred because AT & T has complied with the Communications Act and the regulations promulgated thereunder by filing its tariffs with the FCC and making those tariffs public. To the extent plaintiffs challenge AT & T's advertisements of "True Savings" and its rounded up description of calls on its bills, the statute does not provide a defense because AT & T was not required to clear the advertisements or the description on its bills with the FCC. To state a claim under § 349 or § 350 of the Consumer Protection Act, a plaintiff must allege that: (1) the act or practice is deceptive or misleading in a material respect, and (2) that plaintiff has been injured as a result. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 532, 647 N.E.2d 741, 744 (1995); *Ortho Pharmaceutical Corp. v. Cosprophar, Inc.,* 32 F.3d 690, 697 (2d Cir.1994). The New York Court of Appeals has defined deceptive acts or practices as "representations or omissions ... likely to mislead a reasonable consumer acting reasonably under the circumstances."

*Oswego Laborers,* 85 N.Y.2d at 26, 623 N.Y.S.2d at 533, 647 N.E.2d at 745.

Plaintiffs' claims must be dismissed because neither AT & T's promise of "True Savings" nor its failure to disclose the actual length of the customer's calls amounts to a materially misleading advertisement or practice. "True Savings" is advertising persiflage, devoid of content, that makes no specific promise to consumers. That slogan suggests only that AT & T's residential long-distance services are cheaper than those offered by the other major carriers; it makes no promise to bill for the exact duration of a call. A reasonable consumer would not rely on that slogan alone to choose AT & T over the other carriers; rather, a reasonable consumer would obtain more information about the carriers' relative billing practices. To hold otherwise would suggest that MCI's "Friends and Family" slogan guarantees the MCI subscriber a wide circle of friends and family, each of whom calls frequently, and only with good news.

AT & T's failure to disclose the exact duration of the calls on its bills also is not materially misleading because no consumer reasonably could believe that a designation of a call in whole minutes accurately reflects the length of that call. The only reasonable conclusion is that the carrier must round up or down; without more, the bills alone reveal nothing as to which practice the carrier follows. *See Gershon v. Hertz Corp.,* 215 A.D.2d 202, 202, 626 N.Y.S.2d 80, 81 (1st Dep't 1995) (holding that rental car company's failure to disclose alternative arrangement at lower rate was not materially misleading).

Plaintiffs' claims under the Consumer Protection Act are insufficient also because AT & T's advertising and billing practices have not resulted in any damages to plaintiffs. Because equity will not fix what has not been broken, plaintiffs' claims for equitable relief must be dismissed.

\* \* \* \* \* \*

For the reasons stated above, the motion to remand the *Marcus* action is denied, and AT & T's motions to dismiss the complaints are granted.

SO ORDERED: