J. Alan KUTNER, Plaintiff,

v.

SPRINT COMMUNICATIONS COMPANY L.P., and Spring International Communications Corporation, Defendants.

No. 96–2534 GV.

United States District Court,
W.D. Tennessee,
Western Division.

March 20, 1997.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

GIBBONS, Chief Judge.

Before the court is defendants' motion to dismiss or, in the alternative, for a stay and referral to the Federal Communications Commission. Defendants ("Sprint") argue that plaintiff's complaint fails to state a claim upon which relief can be granted because the plaintiff's claims are preempted by federal law and are barred by the filed tariff doctrine. In the alternative defendants argue that the doctrine of primary jurisdiction requires the entry of a stay and referral to the Federal Communications Commission ("FCC"). For the following reasons, defendants' motion to dismiss is granted.

Plaintiff in this action was a subscriber to defendant Sprint's "Fridays Free" program for small business customers. Under this program, customers committed to a monthly minimum charge and received up to $1,000 per month of free calling on Fridays. Pursuant to Section 203(a) of the Federal Communications Act ("FCA"), Sprint filed its tariff governing the terms and conditions of the Fridays Free program with the FCC. The tariff for the program initially included domestic and international calling. Pursuant to FCC regulations, Sprint amended its tariff in April 1996 to exclude international calling to ten countries from the Fridays Free program.[1] The tariff amendment was allegedly necessitated by an unanticipated increase in international calling volume.

■■■ On a motion to dismiss, the defendant has the burden of demonstrating that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *rehearing denied*, 726 F.2d 277, *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). Motions to dismiss under Fed. Rule Civ. P. 12(b)(6) are not favored and should be granted sparingly and with caution. 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.07[2.–5] (2d.1989). In determining the motion, the court must presume all factual allegations of the complaint to be true and all reasonable inferences are made in favor of the nonmoving party. *Id.* The issue is not whether plaintiff will prevail, but whether the claimant is entitled to offer evidence to support

---

**1.** Sprint has attached copies of Tariff F.C.C. No. 11 ("the Original Tariff") and Amended Tariff F.C.C. No. 11. The court has taken judicial notice of these tariffs and therefore need not convert this motion into a motion for summary judgment pursuant to Rule 56.

The court also notes that, while the parties refer to nine (9) countries that have been excluded from the Fridays Free program, the Amended Tariff lists ten (10) countries that are excluded from the plan.

the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Dismissal, however, is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Moore's* ¶ 12.07[2.–5].

Plaintiff alleges that Sprint's amendment of the tariff constitutes a breach of its contractual obligations. Plaintiff also alleges that Sprint's amendment constitutes unfair and deceptive trade practices in violation of the Tennessee Consumer Protection Act and common law fraud. . Defendants argue, in part, that plaintiff's claims are barred by application of the filed tariff doctrine, also referred to as the filed rate doctrine. The court agrees and finds it unnecessary to reach the additional issues raised by the defendants in their motion to dismiss.[2] *See Birnbaum v. Sprint Communications Co. L.P.,* No. 96–CV–2514, 1996 WL 897326 (E.D.N.Y. Nov. 22, 1996) (dismissing an action nearly identical to the present case based on the filed tariff doctrine).

The Federal Commissions Act ("FCA"), 47 U.S.C. §§ 151–613, establishes a regulatory scheme that is as comprehensive as that imposed by the Interstate Commerce Act. *MCI Telecommunications Corp. v. Graham,* 7 F.3d 477, 479 (6th Cir.1993). The express purpose of the FCA is to "regulat[e] interstate and foreign commerce in communication by wire and radio so as to make available … to all people of the United States a rapid, efficient … communication service with adequate facilities at reasonable charges." 47 U.S.C. § 151. Towards that end, the FCA provides that "[a]ll charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful." 47 U.S.C. § 201(b).

Section 203 of the FCA requires all common carriers of interstate and foreign telecommunications to file a schedule of their charges, as well as the classifications, practices, and regulations affecting such charges. This schedule is known as a tariff. A carrier, such as Sprint, can charge only the rates listed in the tariff. 47 U.S.C. § 203(c)(1). Because the tariff-filing requirement is "the heart of the common-carrier section of the Communications Act," *MCI Telecommunications Corp. v. American Tel. & Tel. Co.,* 512 U.S. 218, 229, 114 S.Ct. 2223, 2231, 129 L.Ed.2d 182 (1994), courts have responded to the requirement by enforcing the filed tariff doctrine.[3]

The classic statement of the filed tariff doctrine comes from *Louisville & Nashville R. Co. v. Maxwell,* 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915):

> Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

*Id.* at 97, 35 S.Ct. at 495.

 The filed tariff doctrine simply "forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority," *Arkansas Louisiana Gas Co. v.*

---

2. Defendant has also alleged that plaintiff failed to serve process. Shortly after defendants' motion to dismiss was filed, plaintiff filed a motion for voluntary dismissal, assumably to correct any defect in service, which this court denied. As requested by Sprint (Def. Resp. to Plaintiff's Notice of Vol. Dis. at 5), and in the interest of judicial efficiency, the court now proceeds to address Sprint's motion to dismiss on those bases other than failure to serve process.

3. The filed tariff doctrine was originally created under the Interstate Commerce Act ("ICA"). Noting the similarities between the FCA and the ICA, courts have looked to the case law interpreting the latter Act as an aid in interpreting and applying the FCA. *See, e.g., MCI Telecommunications Corp. v. American Tel. & Tel. Co.,* 512 U.S. 218, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994); *MCI Telecommunications Corp. v. Graham,* 7 F.3d 477, 479–80 (6th Cir.1993).

Hall ("Arkla"), 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981), and therefore forbids courts from ordering relief that would contravene the filed tariff. *Montana–Dakota Util. Co. v. Northwestern Public Serv. Co.*, 341 U.S. 246, 251, 71 S.Ct. 692, 695, 95 L.Ed. 912 (1951). Under this doctrine, any filed tariff is considered "per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir.1994). The United States Supreme Court recently explained that "the filed rate doctrine embodies the principle that a [subscriber] cannot avoid payment of the tariff rate by invoking common-law claims and defenses such as ignorance, estoppel, or prior agreement to a different rate." *Reiter v. Cooper*, 507 U.S. 258, 266, 113 S.Ct. 1213, 1219, 122 L.Ed.2d 604 (1993).

■ To ensure that carriers charge only the filed rate, both the carrier and the subscriber are presumed to have knowledge of the filed rate. *Kansas City S.R. Co. v. Carl*, 227 U.S. 639, 653, 33 S.Ct. 391, 395–96, 57 L.Ed. 683 (1913). Similarly, if a subscriber contracts for a particular filed rate to cover a definite period of time, "he must be taken to have done so subject to the possible change of the published rate in the manner fixed by statute, to which he must conform or suffer the penalty fixed by law." *Armour Packing Co. v. United States*, 209 U.S. 56, 82, 28 S.Ct. 428, 436, 52 L.Ed. 681 (1908) (quoted in *American Broadcasting Cos., Inc. v. Federal Communications Comm'n*, 643 F.2d 818, 825–26 (D.C.Cir.1980)).

■ Allowing attacks on filed rates in judicial proceedings would entangle the courts in the rate making process and undermine the regulatory agency's authority. Thus, the power to alter the filed rate has been withdrawn from the courts. *See Montana–Dakota Utils. Co.*, 341 U.S. at 251, 71 S.Ct. at 695 (holding that the "right to a reasonable rate is the right to the rate which the Commission files or fixes ... [and] the courts can assume no right to a different one"). This restriction precludes not only the award of remedies that actually change the filed rate, but also of remedies that would have that effect. *See, e.g., Arkla*, 453 U.S. at 579, 101 S.Ct. at 2931

("It would undermine the congressional scheme of uniform rate regulation ... to award as damages a rate never filed with the Commission and thus never found to be reasonable within the meaning of the Act."); *Wegoland*, 27 F.3d at 21 (explaining that determination of fraud damages and determination of reasonable rate are "hopelessly intertwined.").

■ Plaintiff argues that this case is distinguishable from prior cases because the court can enforce the Original Tariff as a reasonable rate. Although superficially appealing, plaintiff's argument falters on further analysis. As pointed out by the *Birnbaum* court, "while the FCC's acceptance of the Amended Tariff does not necessarily mean that the Original Tariff was no longer reasonable, neither does it mean that the rate contained in the Original Tariff is still reasonable." No. 96–CV–2514, 1996 WL 897326 (E.D.N.Y. Nov. 22, 1996). The determination of reasonableness rests in the exclusive province of the FCC. *Montana–Dakota Utils. Co.*, 341 U.S. at 251–52, 71 S.Ct. at 695–96 (courts may not determine what rates are reasonable). Yet, it is only by determining what would be a reasonable rate absent the complained of activity that a court could determine the extent of the damages. The filed tariff doctrine forbids just such a determination. *See Wegoland*, 27 F.3d at 21.

■ Plaintiff seeks relief, in part, through a common law breach of contract claim. The United States Court of Appeals for the Sixth Circuit has held that valid tariffs filed with the FCC "conclusively and exclusively control the rights and liabilities between a carrier and its customer." *MCI Telecommunications Corp.*, 7 F.3d at 479. Thus, the filed rate doctrine prevents a subscriber from enforcing contract rights that contravene governing tariff provisions. *Reiter*, 507 U.S. at 266, 113 S.Ct. at 1219. In addition to the presumption that customers know the actual rates filed, customers are also presumed to know that lawful tariff amendments may occur that will supersede a prior contractual relationship. *Armour Packing Co.*, 209 U.S. at 82, 28 S.Ct. at 436; *American Broadcasting Cos.*, 643 F.2d at

818; *Pay Phone Concepts, Inc. v. MCI Telecommunications Corp.*, 904 F.Supp. 1202, 1207 (D.Kan.1995). As the United States Supreme Court has held, "[i]f the shipper sees fit to make a contract covering a definite period for a rate in force at the time, he must be taken to have done so subject to the possible change of the published rate...." *Armour Packing Co.*, 209 U.S. at 82, 28 S.Ct. at 436. Thus, the Amended Tariff constitutes the contract between Sprint and plaintiff. Because plaintiff alleges a breach of contract based on Sprint's compliance with the contract in force, plaintiff cannot prove a set of facts upon which he will be entitled to relief on his breach of contract claim. Accordingly, defendants' motion to dismiss is granted as to plaintiff's breach of contract claim.

 Plaintiff also alleges that Sprint defrauded him by enticing him to join the Fridays Free program despite Sprint's knowledge that it would deviate from the original agreement.[4] To establish fraud, plaintiff must prove that defendants made a material, false representation; that defendants knew it was false, or made it recklessly; that it was made with the intent that plaintiff rely upon it; and that plaintiff acted in reliance upon it and thereby suffered damages. *Nernberg v. Pearce*, 35 F.3d 247, 250 (6th Cir.1994). Even if the court accepts as true plaintiff's allegations that he detrimentally relied upon Sprint's material and false representations, plaintiff cannot prove damages. As explained in *Marcus v. A.T.& T. Corp.*, 938 F.Supp. 1158 (S.D.N.Y.1996):

> That a common carrier may charge no more and no less than its filed rate necessarily means that a subscriber may pay no more and no less that the filed rate, regardless of equitable circumstances suggesting otherwise. It follows that any subscriber who pays the filed rate has suffered no legally cognizable injury....

That plaintiffs may have been misled by AT & T's ... advertisements of "True Savings," does not mitigate the effect of the filed rate doctrine. Accordingly, plaintiffs' claims for damages are barred by the filed rate doctrine.

*Id.* at 1170. The court in *Marcus* concluded that, "[a]ny remedy that requires a refund of a portion of the filed rate—whether an award of damages for fraud on an agency or an award of damages for fraud on consumers— is barred." *Id.* at 1170. Plaintiff in this case seeks the enforcement of the Original Tariff. Enforcement of the original rates, however, would require this court, in order to assess damages, to make a determination that the Original Tariff constitutes a reasonable rate. As explained, the filed tariff doctrine clearly prohibits this court from making such a determination. *See Birnbaum*, No. 96–CV–2514, 1996 WL 897326; *Marcus*, 938 F.Supp. at 1170 ("what bars a claim is not the harm alleged but the impact of the remedy sought"). The relief plaintiff requests directly implicates the filed tariff doctrine. Because the filed tariff doctrine prevents plaintiff from claiming any rate other than that contained in the Amended Tariff, plaintiff can demonstrate no set of facts that would prove the damages element of his fraud claim. *See Armour Packing Co.*, 209 U.S. at 81–82, 28 S.Ct. at 435 ("This feature of the law ... puts the shipper in many kinds of trade at the mercy of the carrier, who may arbitrarily change a rate upon the faith of which contracts have been entered into."); *American Broadcasting Cos.*, 643 F.2d at 823–24 (holding that a carrier's terms could not be altered by an unfiled contract with a customer in which it agreed not to increase its charges for a specified term). As a result, the filed rate doctrine mandates dismissal of plaintiff's fraud claim against Sprint. *See also MCI Telecommunications Corp. v. Graphnet, Inc.*, 881 F.Supp. 126, 133 (D.N.J.1995) (dismissing fraudulent inducement claim).[5]

---

**4.** Plaintiff's fraud claims are properly based on federal common law. *See Ivy Broadcasting Co.*, 391 F.2d at 491.

**5.** Plaintiff's reliance on *Gelb v. American Tel. & Tel. Co.*, 813 F.Supp. 1022 (S.D.N.Y.1993), to argue that the filed rate doctrine does not preclude claims of fraud in the inducement is misplaced. In *Gelb*, plaintiffs claimed that they would not have used defendants' calling cards had they known the applicable rate. The *Gelb* court specifically found that the claim did not implicate in any manner the reasonableness of the filed rate. Furthermore, the *Gelb* court reserved judgment as to "whether the filed rate doctrine requires dismissal of plaintiffs' damages

As a final cause of action, plaintiff alleges that Sprint has violated the Tennessee Consumer Protection Act, T.C.A. § 47–18–101, *et seq.* In so far as the filed tariff doctrine prevents the court from granting damages based on the reasonableness of the Original Tariff, plaintiff's consumer protection statute claims are precluded. Furthermore, having dismissed all claims over which it has original jurisdiction, the court may decline to exercise its jurisdiction over plaintiff's state law claims. 28 U.S.C. § 1367(c)(4).[6] *See Wegoland,* 806 F.Supp. at 1125 (dismissing state consumer protection law claims where federal claims were dismissed under the filed tariff doctrine); *Birnbaum,* No. 96–CV–2514, 1996 WL 897326.

Accordingly, defendants' motion to dismiss is granted and plaintiff's claims are dismissed in their entirety.

IT IS SO ORDERED.

claim." *Id.* at 1032. In contrast, this court finds damages to be an essential element of fraud and an issue that should not be reserved for later judgment.

6. Although plaintiff originally filed this action in state court, defendants removed the action to federal court on the basis of federal question jurisdiction or, in the alternative, diversity jurisdiction. Diversity jurisdiction, however, requires that each plaintiff have a claim in excess of $50,000, *Schachner v. Blue Cross and Blue Shield of Ohio,* 77 F.3d 889, 896 n. 8 (6th Cir.1996) (citing *Snyder v. Harris,* 394 U.S. 332, 340, 89 S.Ct. 1053, 1058–59, 22 L.Ed.2d 319 (1969)). Plaintiff in this case cannot allege a claim in excess of $50,000 under the Tennessee Consumer Protection Act. Plaintiff's damages would be limited, at best, to $48,000—$12,000 actual damages of $1,000 per month for twelve months plus $36,000 in treble damages. *See* T.C.A. § 47–18–109(a)(3) (limiting treble damages to three times the actual damages sustained). Thus, this court would not have jurisdiction to entertain the state law claims under § 1332.