United States Court of Appeals, Eleventh Circuit.

No. 94-2320.

FLORIDA MUNICIPAL POWER AGENCY, Plaintiff-Appellant, Cross-Appellee,

v.

FLORIDA POWER & LIGHT COMPANY, Defendant-Appellee, Cross-Appellant.

Sept. 19, 1995.

Appeals from the United States District Court for the Middle District of Florida. (No. 92-35-CIV-ORL-22), Anne C. Conway, Judge.

Before COX, Circuit Judge, RONEY and WOOD[*], Senior Circuit Judges.

RONEY, Senior Circuit Judge:

The primary issue in this case is whether the "filed rate" doctrine precludes Florida Municipal Power Agency's claim against Florida Power & Light for refusal to sell network electric transmission services. The filed rate doctrine provides that where a regulated company has a rate for service on file with the applicable regulatory agency, the filed rate is the only rate that may be charged. Since there is a genuine issue as to whether the filed rate covers the network service that plaintiff sought to buy, we vacate and remand the district court's summary judgment for Florida Power & Light.

The possible difference between what plaintiff sought to buy and the filed rate for what defendant had to sell is pointed up by a review of the facts. Plaintiff Florida Municipal Power Agency (Agency) is a municipally owned agency established by law to sell economic and reliable power to a twenty-six member group of Florida

[*]Honorable Harlington Wood, Jr., Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

cities and municipal power authorities. In the early 1980s, Florida Power & Light (FPL) entered into settlement agreements with the Department of Justice and the Nuclear Regulatory Commission and a number of Florida cities, some of whom are members of the Agency. The agreements gave the Agency members the right to purchase transmission service and wholesale power from FPL. Under these agreements, FPL sold "point-to-point" transmission services to the Agency wherein FPL assessed a separate charge for transmission between each generation point and a particular city. If the Agency wanted to supply the city from another power source, it had to pay a separate transmission charge. The rates were filed with the Federal Energy Regulatory Commission (FERC), which has the exclusive authority under the Federal Power Act to determine power allocations and the reasonableness of wholesale power rates.

In a three-count complaint against FPL alleging breach of contract and federal and state antitrust claims for damages and injunctive relief, the Agency asserted that FPL refused to sell it network transmission services from FPL's network. The Agency first requested access to the network in 1989 to allow its members to integrate resources in the same way as does FPL. Network transmission is more economical because a utility can continually change power sources throughout the day to respond to changing demand levels. The Agency contended that without the network service it could not establish an integrated power project and had to rely on more expensive sources of power. In response to FPL's motion for summary judgment, the Agency asserted that the rate schedules currently on file with the Commission "do not provide for

transmission connecting each [integrated] resource to each [integrated] member city, at *any* price." The Agency's Mem. Opp'n FPL's Mot.Summ.J. at 16.

Without addressing the merits of either the contract or antitrust claims, the district court granted FPL's motion for summary judgment on the damage claim, finding the claim was barred by the "filed rate" doctrine. The court denied the Agency's motion for reconsideration. The district court also concluded that a proposed FERC order requiring FPL to provide network transmission service to the Agency mooted its claims for injunctive relief. Both decisions were appealed.

The plaintiff Agency argues that its damage claim was not barred by the filed rate doctrine because the doctrine does not apply when no rate is filed. The Agency contends that while there was a filed rate for *point-to-point* service, FPL refused to sell it *network* transmission, a service the Agency insists is distinct from point-to-point transmission. There was no filed *network* rate.

FPL asserts that network service is nothing more than different pricing of FPL's existing transmission. It claims the Agency's request for network service was actually a request to modify or replace point-to-point rates on file with the FERC. Such modification, FPL contends, is clearly precluded by the filed rate doctrine enunciated in a long line of Supreme Court cases.

The characterization of the plaintiff's claim is therefore critical to whether the filed rate doctrine will apply. The parties do not dispute that *if* there was a filed rate covering network service, the damage claim would be precluded by the filed

rate doctrine. This doctrine was announced in *Keogh v. Chicago & Northwestern Railway,* 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922), where the Supreme Court first held that once a carrier's rate had been submitted to and approved by the responsible regulatory agency, in that case the Interstate Commerce Commission (ICC), a private shipper could not successfully recover antitrust damages on a claim that the rate was the product of an antitrust violation. The Court reasoned that the ICC's approval had, in effect, established the lawfulness of the shipper's rates. 260 U.S. at 162-63, 43 S.Ct. at 49. The Court has reaffirmed the*Keogh* holding in later cases also applying the filed rate doctrine to rates filed with the Federal Power Commission (FPC) and its successor, FERC. *E.g., Square D Co. v. Niagara Frontier Tariff Bureau, Inc.,* 476 U.S. 409, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986) (antitrust damage claim barred; rates filed with ICC); *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981) (breach of contract damage claim barred; rates filed with FPC); *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.,* 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951) (fraud damage claim barred; rates filed with FPC).

In decisions subsequent to *Keogh,* however, the Court has emphasized the limited scope of the filed rate doctrine to preclude damage claims only where there are validly filed rates. In *Carnation Co. v. Pacific Westbound Conference,* 383 U.S. 213, 216, 86 S.Ct. 781, 783, 15 L.Ed.2d 709 (1966), the Court held that a shipper's implementation of rate-making agreements which were not approved by the Federal Maritime Commission was subject to the

antitrust laws. In discussing the *Carnation* case, the Court later noted: "The specific *Keogh* holding ... was not even implicated in *Carnation* ..., because the ratemaking agreements challenged in that case had not been approved by, or filed with [the Commission]." *Square D,* 476 U.S. at 422 n. 29, 106 S.Ct. at 1930 n. 29. In its most recent decision discussing the filed rate doctrine, the Court held that a carrier could not rely on that doctrine when, having filed a tariff lacking an essential element, "in effect it had no rates on file...." *Security Services v. K Mart Corp.,* --- U.S. ---- , ----, 114 S.Ct. 1702, 1708, 128 L.Ed.2d 433 (1994). The Court also has noted that "exemptions from the antitrust laws are strictly construed and strongly disfavored." *Square D,* 476 U.S. at 421, 106 S.Ct. at 1929. It reiterated that the filed rate doctrine does not bar criminal or injunctive antitrust actions. 476 U.S. at 421, 106 S.Ct. at 1929.

If the gravamen of the Agency's claim that the two services are distinct and there is no filed network rate is accurate, then it is clear the doctrine would not confer immunity. The district court improperly concluded in its order on reconsideration that even if network and point-to-point transmission are entirely different services or products, the filed rate doctrine would bar an antitrust claim. There needs to be a factual determination of whether network transmission is such a different product from point-to-point transmission that reasonable ratemaking would require the filing of separate network transmission rates.

The United States has filed an amicus brief in this case asserting concern over the district court's failure to determine if

the network transmission service sought by the plaintiff is different from the point-to-point service for which FPL has filed rates. In that brief the United States stated, as we do also, that we "take[ ] no position as to whether the "network' service FMPA [the Agency] sought was or was not "an entirely different service' from the point-to-point service available at filed rates." The United States suggested, as we do here, "[d]epending on the circumstances, the court also could have considered a primary jurisdiction referral to FERC in connection with this issue. Brief of the United States as Amicus Curiae at 18-19 n. 11. *See generally Reiter v. Cooper,* --- U.S. ----, ----, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993); *Ricci v. Chicago Mercantile Exchange,* 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973); *United States v. Western Pacific Railroad,* 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); *Wagner & Brown v. ANR Pipeline Co.,* 837 F.2d 199 (5th Cir.1988).

If on remand the district court concludes that the services are distinct and FPL is not immune from antitrust liability, it may, for the limited purpose of calculating damages, estimate the rate that would have been in effect but for the violation without infringing on the FERC's jurisdiction. Estimates are permissible and unavoidable in antitrust damage computations. *J. Truett Payne Co. v. Chrysler Motors Corp.,* 451 U.S. 557, 565-66, 101 S.Ct. 1923, 1929, 68 L.Ed.2d 442 (1981); *Zenith Radio Corp. v. Hazeltine Research,* 395 U.S. 100, 123-24, 89 S.Ct. 1562, 1577, 23 L.Ed.2d 129 (1969); *Graphic Products Distributors v. Itek Corp.,* 717 F.2d 1560, 1579 (11th Cir.1983).

We vacate the district court's denial of the Agency's claim for injunctive relief, which will have to be decided by the outcome of proceedings on remand.

We deny the Agency's motion to take judicial notice of post-appeal testimony, which the district court properly can address on remand.

VACATED and REMANDED.