# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 98-IA-00046-SCT

*AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA AND AMERICAN BANKERS INSURANCE GROUP, INC. ("AMERICAN BANKERS")*

*v.*

*BELINDA ALEXANDER, ET AL.*

### CONSOLIDATED WITH

### NO. 97-IA-01271

*AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA AND AMERICAN BANKERS INSURANCE GROUP, INC. ("AMERICAN BANKERS")*

*v.*

*LOUELLA ALLEN, ET AL.*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/10/1998 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY |
| ATTORNEYS FOR APPELLANT: | DORRANCE AULTMAN |
| | WILLIAM C. BRABEC |
| | ROBERT M. FREY |
| | W. SCOTT WELCH, III |
| | JAMES W. CRAIG |
| | MARKHAM R. LEVENTHAL |
| | FRANKLIN G. BART |
| ATTORNEYS FOR APPELLEES: | FORREST MARVIN MORRIS, III |
| | JOHN M. DEAKLE |
| | ANTHONY SAKALARIOS |
| | JOHN MICHAEL SIMS |
| | WILLIAM R. COUCH |
| | TATUM TURNER |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 02/01/2001 |
| MOTION FOR REHEARING FILED: | 2/15/2001; denied 4/26/2001 & Opinion modified at Paragraphs 48 & 49 |
| MANDATE ISSUED: | 10/5/2001 |

**EN BANC.**

**McRAE, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This interlocutory appeal is the consolidation of five cases from four separate counties, Jones, Jasper, Claiborne, and Jefferson, joined under Rule 20 of the M.R.C.P. and involving approximately 1,371 plaintiffs as follows:

| | |
|---|---|
| Clark v. Fidelity Financial Services, Inc., Case No. 97-3-33 (Jones County) | 387 Plair |
| Allen v. Fidelty Financial Services, Inc., Case No. 97-3-36 (Jones County) | 349 Plair |
| Adams v. Fidelity Financial Services, Inc., Case No. 97-0045 (Jasper County) | 365 Plair |
| B. Alexander v. Fidelity Financial Services, Inc., Case No. 97-0190 (Claiborne County) | 81 Plain |
| C. Alexander v. Fidelity Financial Services, Inc., Case No. 97-0061 (Jefferson County) | 189 Plaint |

Each case involves identical issues and has multiple plaintiffs. On June 10, 1998, the trial court in ***Belinda Alexander, et al. v. Fidelity Financial Services, Inc.*, *et al.,*** No. 97-0190 (Claiborne County) and ***Charles Alexander, et al. v. Fidelity Financial Services, Inc., et al.***, No. 97-0061 (Jefferson County) entered an order denying American Bankers' motion to dismiss filed in both of these cases which was denied on October 17, 1997.

¶2. From this order, American Bankers filed a motion for writ of mandamus which was subsequently granted by this Court and by order dated October 19,1998, this Court consolidated this interlocutory appeal with another interlocutory appeal filed in ***Louella Allen, et al. v. Fidelity Financial Services, Inc., et al.***, No. 97-3-36 (Jones County) which involves the exact same issues. Three separate trial judges have ruled similarly in these cases.

¶3. After consideration, we find that joinder of the plaintiffs' claims are proper pursuant to Rule 20 of the Mississippi Rules of Civil Procedure.[(2)] The alleged claims arise out of the same series of transactions or occurrences and satisfy the commonality requirement of Rule 20 with respect to common issues of fact and law. We also find that the plaintiffs' causes of action are not preempted by the filed rate doctrine. This case is not a rate case, but as set out in the amended complaints they are combination of contract, tort and statutory actions brought under the laws of Mississippi. All of these causes of action are founded in common law and are not preempted by state statutes. Lastly, the original and amended complaints filed by the plaintiffs adequately set forth causes of action sounding in fraud. For the reasons set forth below, this Court affirms the trial court's ruling on American Bankers' motion to sever and allow joinder.

## I.

¶4. The plaintiffs allege breach of the duty of good faith and fair dealing implied in every contract in Mississippi and breach of fiduciary duties owed by American Bankers and Fidelity. They claim that American Bankers and Fidelity entered into a scheme to defraud its customers by placing insurance premiums on Fidelity's borrowers at premium rates which were substantially higher than Fidelity could have obtained from a neutral source. They contend that while American Bankers filed certain rates with the Mississippi Insurance Commission, it consciously ignored the rates and its own corporate guidelines in order to charge the maximum rate for premiums regardless of whether the guidelines written by American

Bankers had been met. Generally, the plaintiffs allege that they were force placed into a collateral protection insurance policy underwritten by American Bankers.[(3)] While the plaintiffs do not complain of the fact that they were force placed, they do contend that they were the victims of a hidden scheme that was applied to each plaintiff, regardless of their individual circumstances.

¶5. Using Rule 20, American Bankers filed motions for summary judgment and motions to dismiss in the cases below alleging that the plaintiffs in those cases were improperly joined pursuant to Rule 20 of the Mississippi Rules of Civil Procedure and were barred from bringing causes of action by the filed rate doctrine.

## II.

¶6. The official comment to Rule 20 describes its purpose as:

> The general philosophy of the joinder provisions of these Rules is to allow virtually unlimited joinder at the pleading stage but to give the Court discretion to shape the trial to the necessities of the particular case.

M.R.C.P. 20 cmt.

¶7. In *First Investors Corp. v. Rayner*, 738 So.2d 228 (Miss. 1999), this Court stated that Rules 20 and 42 give trial courts "broad discretion" in determining when and how claims are tried. *Id.* at 238. Therefore, for purposes of this appeal, this Court reviews the trial court judge's actions under an abuse of discretion standard. Federal appellate courts identify the appropriate standard of review as whether the trial judge abused his discretion when allowing or denying joinder. *Bobby Kitchens, Inc. v. Mississippi Ins. Guar. Ass'n*, 560 So.2d 129, 135 (Miss. 1989). *See Fenton v. Freedman*, 748 F.2d 1358, 1361 (9th Cir.1984); *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983).

## III.

**1. WHETHER THE JOINDER OF THE APPELLEES PURSUANT TO RULE 20 OF THE MISSISSIPPI RULES OF CIVIL PROCEDURE IS IMPROPER AND VIOLATES AMERICAN BANKERS' CONSTITUTIONAL RIGHT TO A FAIR TRIAL.**

**A. WHETHER PLAINTIFFS' CLAIMS ARISE OUT OF THE SAME TRANSACTION OR SERIES OF TRANSACTIONS.**

¶8. American Bankers argues that joinder under Rule 20 is improper. Rule 20 provides in pertinent part that:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all these persons will arise in the action. . ..

¶9. American Bankers claim that the same transaction requirement of Rule 20 "demands more than the bare allegation that all plaintiffs are victims of a fraudulent scheme perpetrated by one or more defendants; there must be some indication that each plaintiff has been induced to act by the same misrepresentation." *Insolia*

*v. Philip Morris, Inc*. 186 F.R.D. 547, 549 (W.D. Wis. 1999).

¶10. The *Insolia* case involved the claims of three former smokers and their spouses against several cigarette manufacturers and trade organizations. The court refused to allow a joinder, pointing out that each plaintiff's claim arose out of a unique set of facts and circumstances and "the only thread holding these disparate factual scenarios together is the allegations of an industry-wide conspiracy...." *Id*. at 550.

¶11. American Bankers also points to the case of *Grayson v. K-Mart Corp.*, 849 F. Supp. 785 (N.D. Ga. 1994) in which 11 plaintiffs who worked as managers at various K-Mart stores sued for age discrimination and emotional distress. In that case the court held that the plaintiffs were misjoined. Also, in *Alvarez v. Armour Pharm.*, 1997 U.S. Dist. Lexis 13668 (N.D. Ill. Sept. 4, 1997), 47 plaintiffs joined in the original complaint and then later 200 additional plaintiffs and two related cases attempted to join. The court held that joinder of the plaintiffs violated Rule 20 and that each plaintiff should file a separate case. *Id*.

¶12. The plaintiffs argue that joinder was proper because the coverages which were force placed on each individual plaintiff were exactly the same and that the total premiums charged to each plaintiff varied according to the outstanding loan balance. There was only **one master policy covering all plaintiffs**. The insurance certificate issued to each plaintiff was identical and provided coverage under the one master policy providing the same single interest coverage on each of the plaintiffs' loans. The decision as to what coverage would be force placed on Fidelity's customers was not one made on a case- by- case basis. Rather, the plaintiffs argue that as early as 1986 the decision was made by American Bankers and Fidelity to force place this coverage upon Fidelity's customers.[4] They claim that there is nothing unique or individual about American Bankers' treatment of any of the plaintiffs other than the actual amount of the premiums charged. Any differences that arise are due to the simple fact that some of the plaintiffs' loans were more than others and the premiums were based upon the outstanding loan balance at the time of force placement. Plaintiffs contend that these are not separate disparate acts which require a separate lawsuit for each plaintiff and are beyond mere allegations as to industry-wide corruption.

¶13. Plaintiffs rebut American Bankers' claims that numerous federal court cases have determined that such industry-wide allegations of conspiracy to defraud consumers did not meet the Rule 20 requirement by citing cases similar to the one at hand in which joinder was proper when the complaint arose out of the same transaction or occurrence. *Jolley v. Welch*, 904 F.2d 988, 990 (5th Cir. 1990) (suit by investors against a broker and his employer relating to different investment services provided to the plaintiffs over a period of years); *Nor-Tex Agencies, Inc. v. Jones*, 482 F.2d 1093 (5th Cir. 1973) (The Fifth Circuit applied the "logical relationship" test, holding that if there is a logical relationship between the operative facts - - such as a common scheme to defraud - - then joinder may be proper); *Hanley v. First Investors Corp.*, 151 F.R.D. 76 (E.D. Tex. 1993)(securities fraud action brought by nineteen plaintiffs who purchased shares in mutual funds through First Investors Corp.).

¶14. Plaintiffs further respond to American Bankers' arguments by claiming that: (1) the only way that the trial courts will actually have "clogged their dockets with an unmanageable morass of litigation" is if all 1350 plaintiffs are forced to file individual lawsuits; (2) the "weeding out" process which American Bankers claims would occur if each individual were required to file their own claim would not be accomplished by a fair trial in each case, but instead through harsh economics in which thousands of claims would appear too small to litigate separately, thus allowing large corporations to amass profits while basically creating for itself procedural immunity; (3) a look at the record which has been submitted to this Court from the trial court

below flies in the face of American Bankers' contention that joinder will create unmanageable litigation. Considering that the record contains 121 bound volumes with more than eight thousand pages, forcing the plaintiffs to take their claims on a case- by- case basis, the paperwork alone would swamp the trial and appellate courts. This Court is mindful of the teachings of the United States Supreme Court in cases employing Federal Rule of Civil Procedure 23. The Court said in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed. 2d 689 (1997):

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*See also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

¶15. This Court held in *Barrett v. Coullett*, 263 So.2d 764, 766 (Miss. 1972): "[a] suit on behalf of a class should be closely studied, carefully analyzed and permitted only in clear cases because by its very nature such an action deprives non-appearing parties of their separate personal day in court, of their right to a choice of remedy, and they are bound forever by the decision rendered."

¶16. However, since 1981 we have fashioned our Rules of Civil Procedure to handle cases of this type under Rule 20 and 42.

¶17. The plaintiffs contend that due to the dramatic increase in civil cases filed in Mississippi and our refusal to adopt class action, the trial courts should be allowed to apply Rule 20 of the M.R.C.P. in order to deal more efficiently with the sudden influx of cases and allow them to choose their attorneys to represent them.

¶18. This Court has, in the past, taken notice of the unavailability of class actions and has liberalized the rules of civil procedure at times in order to better accommodate parties who are consequently shut out of the legal system. In *Mississippi High School Activities Ass'n., Inc. v. Coleman*, 631 So.2d 768, 773 (Miss. 1994), this Court noted the exception to the "mootness doctrine" holding:

> Mississippi's expansion of the exception to the mootness doctrine works to fill the gap left open by the unavailability of class actions in Mississippi. Federal courts need not employ such an expanded exception to the mootness doctrine because class actions are available to insure that moot cases which are capable of repetition yet evading review are adjudicated as live controversies.

¶19. Much like the state rule, Fed. R. Civ. P. 20 imposes the same two requirements for joinder of parties, i.e., the transaction or occurrence test and the common question of law or fact test. Similar to the approach adopted by the Official Comment to Miss. R. Civ. P. 20, the federal courts view the transaction or occurrence test on a case by case basis utilizing a liberal approach toward joinder. 7 Wright, Miller & Kane, *Federal Practice & Procedure: Civil 2nd* § 1653 (1986). In fact, under the federal rule, if the transaction and occurrence test cannot be met, there is always a possibility that the cases can be consolidated solely on the existence of common issues. *Id.* When reviewing common questions of law or fact, the existence of only a single common issue of law, or a single common issue of fact will support joinder. *Id.*

¶20. In addition, the concept of the inability of an appellate court to substitute its own view for the findings of a trial court judge regarding joinder was discussed by this Court in the case of *Bobby Kitchens, Inc. v.*

*Mississippi Insurance Guaranty Ass'n.*, 560 So.2d 129 (Miss. 1989). In ***Bobby Kitchens***, ***Inc.,*** cited in the Mississippi Manufacturers Association ("MMA") amicus curiae brief, (5) this Court considered whether a plaintiff should have been allowed to add additional claims against individual defendants along with his primary claim against the defendant Insurance Guaranty Association. *Id.* at 134. Although we felt that "the better choice would have been to allow joinder," this Court correctly recognized that it could not substitute its own judgment. *Id.* As a result, it affirmed the trial court's denial of joinder as not being an abuse of discretion.

¶21. A review of several of the cases relied upon by American Bankers instantly reveals, however, that the factors which motivated the courts to order separate trials are not present in the case at bar. In ***Grayson***, eleven plaintiffs filed an age discrimination suit against their employer. ***Grayson v. K-Mart Corp***., 849 F.Supp. 785, 791 (N.D. Ga. 1994). A joint trial of plaintiffs' claims would have involved eleven different factual situations, eleven sets of work histories, eleven sets of witnesses and testimony, and the laws of four different states. *Id.* at 791. The case at bar stands in stark contrast to the factual situations in ***Grayson***. Here, each plaintiff has alleged the very same claims involving the same insurance policies. As such, the prejudice and confusion contemplated by the defendant is not sufficient to warrant separate trials. At the very least, any prejudice or confusion can be remedied by a carefully drafted jury instruction.

¶22. It is clear that all of the plaintiffs' claims arise out of the same pattern of conduct, the same type of insurance, and involve interpretation of the same master policy. All of the plaintiffs' claims are similar with the exception of the actual dollar amount charged on premiums. Even considering a rigid application of Rule 20 as American Bankers suggests, this Court would find it hard not to allow consolidation in these cases. In addition, under an abuse of discretion standard, the course of conduct undertaken by the trial judges does not rise to such a level; and therefore, we affirm the decision.

### B. WHETHER THE COMPLAINTS ALLEGE A COMMON QUESTION OF LAW OR FACT WITHIN THE MEANING OF RULE 20.

¶23. American Bankers argues that joinder under Rule 20 is improper because there are no common questions of law or fact; and that similar conduct alone is insufficient to satisfy the "commonality" requirement. It claims that because the plaintiffs' claims relate to more than 1,371 independent loan transactions each particular claim involves an inquiry into the facts and circumstances unique to that plaintiff. (6)

¶24. The plaintiffs assert that the cases at hand contain at least twenty-two common issues of fact and law which apply to each and every plaintiff. Plaintiffs point out that the case cited by American Bankers, ***Smith v. North Am. Rockwell Corp.***, 50 F.R.D.515 (N.D. Okla. 1970), for the authority that plaintiffs' claims lacked common questions of fact or law, involved claims based upon completely separate acts of discrimination with respect to promotion or job assignments." In the case at hand, individual treatment did not take place but instead the same fraudulent scheme or course of conduct was allegedly involved.

¶25. American Bankers has admitted through its actions that the common question requirement has been met. As indicated in its motions filed before the trial courts, and as argued in its brief, American Bankers asserts the filed-rate doctrine as a defense to all of the plaintiffs' claims. Although the trial court judges were correct in denying such a defense, the fact that this singular issue was considered as to all plaintiffs in one hearing is strong proof that in the interest of judicial economy all claims should remain intact in this case.

### C. WHETHER THE MISJOINDER OF MULTIPLE PLAINTIFFS IN THESE CASES THREATENS AMERICAN BANKERS' CONSTITUTIONAL RIGHT TO A FAIR AND IMPARTIAL TRIAL.

¶26. American Bankers contends that even if Rule 20(a) were completely satisfied, to allow joinder would violate its fundamental right to a fair and impartial trial. It argues that under these circumstances, "considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial."*In re Consol. Parlodel Litig*., 182 F.R.D. 441, 444 (D.N.J. 1998)(quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990), One form of potential prejudice alleged by American Bankers is the cumulative and otherwise inadmissible evidence being admitted from multiple, separate, unrelated transactions. It claims that any benefits gained by the efficiency of joinder is not worth the cost of fairness.

¶27. The overriding theme of American Bankers is its disagreement with the venue of the instant action in Jefferson County.[7] Miss. R. Civ. P. 82 (c) provides that "where several claims or parties have been joined, the suit may be brought in any county in which any one of those claims could properly have been brought." This Court has previously stated that when Rule 20 joinder of parties is involved, "venue is proper wherever it is proper as to one such claim." *McDonald v. Holmes*, 595 So.2d 434, 436 (Miss. 1992). A review of the record reveals these are all Mississippi plaintiffs with residents in the counties where suits were filed. Consequently, American Bankers' general complaints with regard to venue lack merit.

¶28. American Bankers' argument regarding the vast number of claims has been rejected by courts outside the jurisdiction. In *Guedry v. Marino*, 164 F.R.D. 181 (E.D. La. 1995), the Louisiana district court, although considering the claims of seven plaintiffs, rejected the defendant's argument that the sheer number of claims coupled with the testimony to support such claims would cause prejudice and confusion. In dismissing this argument, the court held that any concerns of defendants could be addressed using appropriate instructions:

> For the foregoing reasons, the Court fathoms no valid notions that favor defendant's motion to sever, whether pursuant to Rule 20 (a) or Rule 42 (b), with compelling legal basis. To allow seven individual trials on essentially the same case, if not identical, issue could cause this matter to go on forever, case after case.

*Id.* at 186.

¶29. As with all three issues under this section, there is no proof that the trial courts abused their discretion in allowing the plaintiffs' claims to remain consolidated. This especially holds true in light of the fact that American Bankers attempted to pursue an affirmative defense common to all plaintiffs. In consideration of the facts in this case and the abuse of discretion standard, the course of conduct chosen by the trial judges was not error. It appropriately precluded the possibility of numerous separate trials and inconsistent rulings on the same issues (which even American Bankers admits are common to all claims).

### 2. WHETHER THE APPELLEES ARE BARRED FROM SEEKING JUDICIAL REVIEW BY APPLICATION OF THE FILED RATE DOCTRINE.

¶30. American Bankers submits that any of the complaints made in reference to the "reasonableness" of American Bankers' CPI premium rates are unfounded, as they were submitted to and expressly approved

by the state agency charged by the legislature with jurisdiction over insurance rates. American Bankers contends that any judicial determination on these rates would be fundamentally unfair, would raise serious due process concerns and violate the "filed-rate" doctrine. "Simply stated, the doctrine holds that any "filed rate" - - that is, one approved by the governing regulatory agency - - is pers se reasonable and unassailable in judicial proceedings brought by ratepayers." *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994). *Accord United Gas Pipe Line Co. v. Willmut Gas & Oil Co.*, 231 Miss. 700, 97 So.2d 530, 531 (1957)(petitioner "can claim no rate as a legal right that is other than the filed rate, whether fixed or merely accepted by the Commission, and not even a court can authorize commerce in the commodity on other terms.") (quoting *Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Comm'n*, 341 U.S. 246, 251 71 S. Ct. 692, 95 L.Ed. 912 (1951)).

¶31. American Bankers first argues that the filed-rate doctrine applies squarely to protect regulated insurance rates from judicial intervention and redetermination. It cites one of the earliest cases discussing such doctrine which was heard by the U.S. Supreme Court. In *Keogh v. Chicago & Northwestern Ry.,* 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922), the plaintiff alleged a conspiracy to fix freight transportation rates at an unnaturally high level. Writing for the Court, Justice Brandeis held that the complaint had to be dismissed because the rates had been filed with the Interstate Commerce Commission and deemed reasonable. Justice Brandeis reasoned that any attempt to reassess the reasonableness of the rates would require the judiciary to "reconstitute the whole rate structure" of the industry. *Id.* at 163-64.

¶32. Since *Keogh*, the filed-rate doctrine has been relied upon by many entities regulated by federal or state law, including claims against insurers which directly or indirectly challenge the approved premium rate.[8] American Bankers charges that "the filed-rate doctrine prevents more than judicial rate-setting; it precludes any judicial action which undermines agency rate-making authority." *Katz v. MCI Tel. Corp*., 14 F. Supp.2d. 271, 274 (E.D.N.Y. 1998); *Kutner v. Sprint Communications Co.*, 971 F. Supp. 302 (W.D. Tenn. 1997)(filed-rate doctrine forbids courts from ordering relief that would contravene the filed rate).

¶33. American Bankers' second argument hinges on the premise that the filed-rate doctrine precludes all claims against regulated entities which directly or indirectly challenge the approved rate. The two purposes of the filed-rate doctrine are that first, it protects against "price discrimination" between ratepayers (the "nondiscrimination strand"), and second, it preserves the exclusive role of regulatory agencies in approving rates that are "reasonable" by "keeping courts out of the rate making process" (the "non-justiciability strand"). *Marcus v. AT&T Corp.*, 138 F.3d 46, 58 (2d Cir. 1998).

> Application of the filed-rate doctrine in any particular case is not determined by the culpability of the defendant's conduct or the possibility of inequitable results. Nor does the doctrine's application depend on the nature of the cause of action the plaintiff seeks to bring. Rather, the doctrine is applied strictly to prevent a plaintiff from bringing a cause of action even in the fact of apparent inequities whenever either the nondiscrimination strand or the nonjusticiability strand underlying the doctrine is implicated by the cause of action the plaintiff seeks to pursue.

*Id.* at 58-59 (citations omitted).

¶34. American Bankers points out that numerous courts have held the filed-rate doctrine to prohibit plaintiffs from claiming a lower rate than the one filed by a regulatory entity with the appropriate regulatory agency. *Florida Mun. Power Agency v. Florida Power & Light Co.*, 64 F.3d 614, 615 (11th Cir.

1995). Moreover, it claims that "all customers are 'conclusively presumed' to have constructive knowledge of the filed tariff under which they receive service." *Fax Telecomms., Inc. v. A.T.&T.*, 138 F.3d 479, 488 (2d Cir. 1998) (citing *Kansas City S. Ry. v. Carl*, 227 U.S. 639, 653 33 S.Ct. 391, 57 L.Ed. 683 (1913).

¶35. American Bankers cites *Marcus v. A.T.& T. Corp.*, 938 F. Supp. 1158 (S.D.N.Y. 1996), *aff'd*, 138 F.3d 46 (2d Cir. 1998) to illustrate the broad reach of the filed-rate doctrine. In *Marcus*, plaintiffs sued AT& T for their alleged failure to disclose their practice of "rounding up" long-distance calls to the next higher minute. While the plaintiffs did not directly challenge AT&T's filed rate per se, they did claim that but for such fraudulent practices customers would have switched long-distance carriers or would have been more careful when on the phone. *Marcus*, 138 F.3d at 59.

¶36. The action was dismissed based on the filed-rate doctrine because, "any subscriber who pays the filed rate has suffered no legally cognizable injury." *Marcus*, 938 F. Supp. at 1170. The court went on to say that "any remedy that requires a refund of a portion of the filed rate - - whether as an award of damages for fraud on an agency or an award of damages for fraud on consumers - - is barred. *Id.* Apparently, because the customers were presumed to have had knowledge of the lawful rate, no customer could demonstrate that he reasonably relied on any of the alleged misrepresentations by AT&T regarding the file rate. *Id*. at 63.

¶37. In American Bankers' last argument on this issue, it stresses that the Mississippi Insurance Department is given full powers of supervision and enforcement of insurance rates, including approval and disapproval of rates[9] and that the presence of such comprehensive regulatory schemes have compelled courts to apply the file-rate doctrine. It argues that a failure to apply the filed-rate doctrine in this case would "seriously undermine Mississippi's comprehensive insurance regulatory scheme and would require the judiciary to second-guess the Mississippi Insurance Department's rate-making decisions."

¶38. The plaintiffs argue that the filed-rate doctrine does not preclude them from pursuing their claims since American Bankers ignored its own approved rates. Alternatively, they contend that if the filed-rate doctrine did preclude a challenge as to the reasonableness of the rates charged, it is still not a defense to the claims of breach of fiduciary duty and the duty of good faith and fair dealing charged against American Bankers.

¶39. While American Bankers cites numerous Mississippi Code sections detailing the authority of the state insurance commissioner to approve rates, it fails to cite Miss. Code Ann. § 83-5-33 which states:

> No person shall engage in this state in any trade practice which is defined in § 83-5-29 to 93-5-51 as, or determined pursuant to said sections, to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance. The trade practices which the legislature has determined are unfair or deceptive acts or practices include misrepresentations and false advertisements, written misrepresentations, and false advertisements, and false information and advertising in general.

¶40. The complaints in the case at hand involve claims of breach of fiduciary duty, breach of implied covenants of good faith and fair dealing, fraudulent misrepresentation and negligent misrepresentation among others. All of these causes of action are founded in the common law, and this Court has previously held that such claims are not preempted by state statutes. *Protective Servs. Life Ins. Co. v. Carter*, 445 So.2d 215, 216 (Miss. 1983).

¶41. In *Carter*, the Chancery Court of Clay County heard a case brought by Protective Services against an individual for tortious interference with a contractual right. *Id*. Carter was hired to look for a local agent to sell burial policies. *Id*. The problem arose when the agent Carter selected began letting policies which he had sold on behalf of Protective Services in order to be replaced by policies written by Valley Insurance Company. *Id*. This Court, in reviewing prohibited unfair practices under § 83-5-35, held that if in fact such an unfair competitive practice was found to have taken place, the Commissioner of Insurance had the power to examine and investigate into the affairs of every person engaged in the business of insurance in this state to determine whether such person has been or is engaged in any unfair method or competition or any unfair or deceptive act. *Id*. This Court went on to state that while there is no provision in the statute for a cause of action for damages based on these actions, one did exist under common law. *Id*.

¶42. These cases are not rate cases, but as set out in the amended complaints they are combination contract, tort and statutory actions brought under the laws of Mississippi. In *Gelb v. AT&T Co.*, 813 F. Supp. 1022, 1023 (S.D.N.Y. 1993), a group of plaintiffs alleged that AT&T concealed the cost of using a calling card. Further, the plaintiffs alleged that AT&T fraudulently induced its customers into buying a calling card by leading them to believe that the use of the card was free when, in fact, AT&T levied a substantial charge for using the card. *Id*. Three claims of liability were asserted in *Gelb*: (i) fraud as a matter of federal common law; (ii) violation of the RICO statute; and (iii) violation of a consumer protection statute. *Id*. AT&T argued that the plaintiff's claim was barred by the filed rate doctrine. *Id***.** The federal court held that there was nothing in the policy underpinnings of the filed rate doctrine which would cause it to protect a defendant who unlawfully exacted payment, even at a lawful rate. *Id*. Furthermore, the court held that AT&T could not insulate itself from all tort claims by simply invoking the filed-rate doctrine. *Id.* at 1030. The court's rationale hinged on the fact that allowing the filed-rate doctrine to bar the claim, any other company in a regulated industry would thereby be practically immune from common law claims founded in state law as long as they followed the filed rate. This would appear to also shield potential defendants from liability for civil conspiracy in non-regulated illegal activities.

¶43. Courts in a number of other jurisdictions have held that in certain circumstances the filed-rate doctrine is inapplicable. The Fifth Circuit held in *Gulf State Utils. Co. v. Alabama Power Co.*, 824 F.2d 1465, 1472 (5th Cir. 1987) that contracts to purchase electricity could be set aside if the plaintiff could demonstrate fraudulent inducement, as such a remedy "would not interfere with the federal agency's rate making powers." *See also H. J., Inc. v. Northwestern Bell Tel. Co.*, 954 F.2d 485, 490 (8th Cir. 1991) (filed rate doctrine arguably inapplicable where claim "[does] not attack the rate itself and [does] not require court to "second guess" the rate making agency.")*, Litton Sys., Inc. v. American Tel. Co.*, 700 F.2d 785, 820 (2nd Cir. 1983)(holding that the filed-rate doctrine was inapplicable when the plaintiffs did not call upon the court to even indirectly determine what a reasonable rate would have been); *City of Kirkwood v. Union Elec. Co.*, 671 F.2d 1173, 1179 (8th Cir. 1982) (holding an award of antitrust damages for alleged creation and maintenance of an anti-competitive price squeeze did not conflict with regulatory agency's authority to oversee rates because the plaintiffs did not challenge those agency's reasonableness determination); *Wegoland, Ltd. v. NYNEX Corp.*, 806 F. Supp. 1112, 1116 (S.D.N.Y. 1992) (the filed rate doctrine was "arguably inapplicable" in cases where "courts are not asked to determine what a reasonable rate should be.").

¶44. Article 3, Section 24 of the Constitution of the State of Mississippi states:

All courts shall be open; and every person for an injury done him in his lands, goods, person, or

reputation, shall have remedy by due course of law and right and justice shall be administered without sale, denial, or delay.

¶45. Article 3, Section 31 states that the right to trial by jury shall remain inviolate. The filed rate doctrine has never been held to be an absolute bar to litigation. To apply the filed rate doctrine in this manner would be an encroachment by regulatory agencies into the court system and would deprive the plaintiffs of their right to trial by jury.

¶46. This Court considers the filed-rate doctrine but also recognizes its exceptions listed herein. While the filed-rate doctrine generally creates a presumption that charged rates are reasonable, the concern is when judicial action might affect those rates. *Gulf States Utils. Co. v. Alabama Power Co.*, 824 F.2d 1465, 1472 (5th Cir. 1987).[(10)] The United States Supreme Court has entertained issues regarding the filed-rate doctrine but has yet to determine whether a fraud exception exists. *Arkansas La. Gas Co. v. Hall*, 453 U.S. 571, 583 n.13, 101 S.Ct. 2925, 69 L.Ed. 2d 856 (1981). As pointed out by both parties in this case, jurisdictions are split on applying such a fraud exception. At the very least it appears that American Bankers may have breached its duty of good faith and fair dealings on all parties to a contract. This Court has recognized such a duty in *UHS-Qualicare, Inc. v. Gulf Coast Community Hosp., Inc.*, 525 So.2d 746, 757 (Miss. 1987).[(11)]

¶47. This Court has ruled on the issue of fiduciary duties in the past. In *Lowery v. Guaranty Bank & Trust Co.,* 592 So.2d 79, 83 (Miss. 1991), the Court stated:

"Fiduciary relationship" is a very broad term embracing both technical fiduciary relations and those informal relations which exist whenever one person trusts in or relies upon another... A fiduciary relationship may arise in a legal, moral, domestic, or personal context where there appears " on the one side an overmastering influence or, on the other side, weakness, dependence or trust justifiably reposed."

More importantly, the Court in *Lowery* held that the existence of a fiduciary duty is a question of fact. *Id.* at 85.

¶48. By virtue of having entered into the loan agreement with Fidelity and the subsequent force placement of insurance with American Bankers, plaintiffs justifiably expected both defendants would deal with them in good faith as such an obligation is imposed on parties who contract for performance of obligation with each other. *Cenac v. Murray*, 609 So.2d 1257 (Miss. 1992). Plaintiffs, because of their alleged weaker financial position and lack of sophistication and knowledge with regard to this area, may fill the requirements in *Lowery* of weakness, dependence or trust, justifiably reposed. Conversely, American Bankers appears to be in a strong financial position, especially in comparison with plaintiffs. Under these circumstances, plaintiffs submit that the fiduciary relationship as defined by *Lowery* can be found to exist.

¶49. American Bankers may be found to have owed a fiduciary duty to them by failing to inform the plaintiffs of the nature of the profit sharing scheme between American Bankers and Fidelity. In addition, since American Bankers and Fidelity were agents of each other, both may be found to have owed a fiduciary duty to the plaintiffs which it negligently failed to perform.

¶50. As a result, the filed-rate doctrine is not a roadblock to the plaintiffs' day in court.

### 3. WHETHER THIS COURT SHOULD REVERSE THE DENIAL OF AMERICAN

**BANKERS' MOTIONS TO DISMISS BECAUSE THE COMPLAINTS FAIL TO PROPERLY PLEAD ANY LEGALLY COGNIZABLE CLAIMS AGAINST AMERICAN BANKERS ON BEHALF OF ANY SINGLE PLAINTIFF**.

¶51. American Bankers alleges that plaintiffs' claims of fraudulent misrepresentation and omission are asserted without any attempt to satisfy the heightened pleading requirements under Rule 9 of the Mississippi Rules of Civil Procedure. Pursuant to section (b) of that rule, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

¶52. Plaintiffs argue that this is not an issue before this Court on interlocutory appeal. Neither the interlocutory appeal, the petition for writ of mandamus, or the request for emergency stay entered by American Bankers raise issues of sufficiency of pleadings.

¶53. It is the Court's opinion that the original and amended complaints filed by the plaintiffs adequately set forth causes of action sounding in fraud. At the very least, a proper remedy for any insufficiency in the pleadings at this point would be an order allowing an amendment of the pleadings rather than a total dismissal of the cases. We, therefore, do not address this issue at this time.

## IV.

## CONCLUSION

¶54. In reviewing the facts and law surrounding this case, we find that the trial courts correctly joined all plaintiffs. The cases are consistent with the liberal purpose and intent behind Rule 20. In finding that the filed-rate doctrine has never been an absolute bar to litigation and to do so in these cases would be an encroachment by regulatory agencies into the court system and would deprive the plaintiffs of their right to jury trial. Having 1,371 cases tried separately with separate discovery and trials would create havoc in the trial courts and delay. Last, while the sufficiency of pleadings may be an issue before this Court, American Bankers' claim that fraud is not pled with sufficient particularity does not hold water. For the reasons stated above, we therefore affirm the trial courts' rulings on American Bankers' motion to sever and allow joinder.

¶55. **AFFIRMED.**

**PITTMAN, C.J., BANKS, P.J., DIAZ AND EASLEY, JJ., CONCUR. WALLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, MILLS AND COBB, JJ.**

**WALLER, JUSTICE, DISSENTING:**

¶56. Because the record does not contain sufficient indication that the plaintiffs satisfy the same transaction and occurrence requirement of M.R.C.P. 20, I would reverse and remand these cases for the trial courts to develop the record more completely and then determine whether joinder is proper under M.R.C.P. 20. Therefore, I respectfully dissent.

¶57. The record does not include any detailed information about the plaintiffs' claims. There is no indication of the date or time that the plaintiffs formed a relationship with Fidelity Financial Services, Inc., or Fidelity Acceptance Corporation (referred to collectively as "Fidelity"), the office or location that the fiduciary relationships developed, the Fidelity employees who may be potential witnesses, the various reasons that

the plaintiffs defaulted on their obligations with Fidelity causing the insurance coverage by American Bankers Company of Florida to become an issue, or the amount of actual damages of each plaintiff. These facts are essential to a determination of whether the plaintiffs in this case have shown a common transaction or occurrence, as these cases all potentially involve vastly different evidence.

¶58. The question of whether Rule 20 joinder is proper is factually intensive and to be made on a case-by-case basis. Federal courts have defined the transaction or occurrence element of Rule 20 to include a "logical relationship" test. *Alexander v. Fulton County*, 207 F.3d 1303, 1323 (11th Cir. 2000) (citing *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)); *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 251 (2d Cir. 1986). In *Hanley v. First Investors Corp.*, 151 F.R.D. 76, 79-80 (E.D. Tex. 1993), a Texas federal district court speculated that the Fifth Circuit would be open to such an interpretation of the transaction or occurrence requirement. According to *Hanley*, the Fifth Circuit, in *Nor-Tex Agencies, Inc. v. Jones*, 482 F.2d 1093 (5th Cir. 1973), treated Rule 13 and Rule 20 similarly and determined that joinder was proper where there was a logical relationship between the operative facts, such as a common scheme.

¶59. Rule 20 of the Federal Rules of Civil Procedure is interpreted broadly in an effort to encourage joinder and enhance judicial economy by lessening the work of the trial courts in allowing them to decide cases of common facts and law together. *Alexander*, 207 F.3d at 1323; *Hanley*, 151 F.R.D. at 80. However, the federal rule interpretation must be considered in light of the class action mechanism available through Fed. R. Civ. P. 23, which has no counterpart in the Mississippi Rules of Civil Procedure. For example, *Alexander* and *Mosley* both dealt with putative class actions. Since the class action mechanism is not available in Mississippi, we must wash our interpretation of M.R.C.P. 20 with the common sense of judicial economy.

¶60. Judicial economy is not served if we overburden our trial courts through joinder with cases that involve potentially different evidentiary proofs. If the plaintiffs' cases arose at different Fidelity offices employing different personnel and different agreements, then the proof of each case is likely to involve different witnesses and evidence. Each of the plaintiffs' claims will have arisen at a different time and under different circumstances when American Bankers insurance was placed to provide coverage on Fidelity's collateral. Therefore, the amount of damages will also be different.

¶61. This Court has concluded that a same transaction or occurrence means that the cases have a common nucleus of facts. *Kiddy v. Lipscomb*, 628 So. 2d 1355, 1357 (Miss. 1993). The majority concludes that the plaintiffs have satisfied the transaction or occurrence requirement because they allege the same pattern of conduct and type of insurance and seek interpretation of the same master policy. However, those common facts alone are not enough. For example, in *Demboski v. CSX Transp., Inc.*, 157 F.R.D. 28 (S.D. Miss. 1994), a suit concerning four separate railroad crossing accidents was brought against the defendant railroad company alleging that the accidents arose from a common pattern or general practice of the railroad company. The federal district court severed the cases, finding improper joinder and reasoning that the cases would involve different plaintiffs, separate accidents, different crossings, different train crews, different dates and times, different driver conduct, different vehicles, dif ferent injuries, and different damages. *Id.* at 29-30. The court concluded that while the plaintiffs might be able to show some common negligence in all of the claims, the other evidence would be so different as to make a common trial unmanageable and unfair to the litigants. *Id.* at 30.

¶62. A common nucleus of facts necessarily implies that the plaintiffs' claims will be more similar that dissimilar. *See **Hanley***, 151 F.R.D. at 80. Among the factors that may demonstrate a common transaction or occurrence include plaintiffs whose claims arose by dealings with the same local Fidelity office, common representations made to the plaintiff by Fidelity personnel, relevant time periods, circumstances of default, losses incurred, damages claimed, or other factors of like effect. Joining those claims on a local venue basis would lessen the obligation of any particular trial court by spreading those very similar claims more evenly among the courts in the state. Those courts then would have common evidence to make a joint trial more speedy and efficient.

¶63. A review of the record reveals that there are, among the three original cases that are part of this interlocutory appeal, fifteen plaintiffs who are not residents of Mississippi. In the Jones County action, there are eleven plaintiffs who are out-of-state residents: Dean from Virginia, Hearn from Illinois, Lathan and Merck from Alabama, Reetz from Arkansas, Richardson from Texas, Simmons from Minnesota, Slay and Weathersby from Georgia, Triplett from Washington, and Wilson from Tennessee. In the Jefferson County action, there are four plaintiffs who are out-of-state residents: Williams from Alabama, Vickers from Tennessee, Nguyen from Massachusetts, and Musgrove from Wisconsin. Unless those plaintiffs can show some nexus with the State of Mississippi, they should not be joined in these state actions.

¶64. For these reasons, I would reverse and remand to allow the trial courts to determine what exactly the operative facts are and to fashion a method of joining those plaintiffs whose claims meet the same transaction or occurrence requirement of Rule 20.

### SMITH, MILLS AND COBB, JJ., JOIN THIS OPINION.

1. American Bankers, the appellant, on page 3 of its brief asserts that the plaintiffs' counsel,"gathered hundreds of individuals from 51 different Mississippi counties, and selected four Mississippi Circuit Courts in which to file the following five 'mass' actions."

2. The defendants had moved to dismiss all claims using the same rules (Rules 20 and 42) that the plaintiffs had used to consolidate, and they now are here contested on this appeal.

3. It is the plaintiffs' contention that as early as 1986, American Bankers and Fidelity entered into a scheme whereby American Bankers would provide insurance coverage for Fidelity borrowers who had allowed the insurance which secured their collateral to lapse. The manner in which the policies were force placed on Fidelity's customers was allegedly calculated to benefit only American Bankers and Fidelity through an elaborate kickback scheme which allowed Fidelity to keep up to 50% of the premiums collected by American Bankers. According to the plaintiffs, American Bankers agreed to monitor Fidelity's customers and to notify them when their insurance lapsed. The end result of the monitoring service agreement and kickback scheme was to profit from the fiduciary relationship which existed between Fidelity, American Bankers and their borrowers.

4. Plaintiffs contend that American Bankers knew that the rates it was charging to each of the plaintiffs was not being applied in an equitable manner and that the events which triggered the application of the "approved rates" had not occurred. Plaintiffs attach Exhibit B which is a May 16, 1990, memo from Mike Stremlau to Dom Ilya of American Bankers. Plaintiffs urge that this memo proves that American Bankers knew there was no equity in the underwriting process and that American Bankers needed some sort of objective underwriting review of the criteria for each account.

5. An Amicus Curiae Brief was submitted by the Mississippi Manufacturers Association in support of American Bankers and one was submitted by the Mississippi Trial Lawyers Association in favor of the plaintiffs.

6. At oral argument, counsel for American Bankers was asked at the time he field his motion to dismiss based on the filed-rate doctrine why he was also traveling under Rule 20, to which counsel admitted that he had to use what he could at the time.

7. Counsel for American Bankers admitted at oral argument that if joinder was proper under Rule 20 they would not argue that venue was improper.

8. See, e.g., *Morales v. Attorneys' Title Ins. Fund, Inc.* 983 F. Supp 1418 (S.D. Fla. 1997); *Calico Trailer Mfg. Co. v. Insurance Co. of N. Am.*, 1994 U.S. Dist. LEXIS 20750 (E.D. Ark. Oct. 13, 1994), *aff'd on other grounds*, 155 F.3d 976 (8th Cir. 1998); *Byan v. Prudential Ins. Co. of Am.*, 662 N.Y.S.2d 44 (N.Y. App. Div. 1997); *N.C. Steel, Inc. v. National Council on Comp. Ins*., 596 S.E.2d 369 (N.C. 1998).

9. American Bankers cites numerous Mississippi Code provisions, § 83-2-11, § 83-2-13, § 83-2-29 and § 83-5-17, prescribing the role of the Insurance Commissioner.

10. *Litton Systems, Inc. v. American Tele. & Tele. Co.*, 700 F.2d 785, 820 (2nd Cir. 1983) (holding the filed rate doctrine inapplicable when the plaintiffs did not call upon the court to even indirectly determine what a reasonable rate would have been); *Kirkwood v. Union Elec. Co.*, 671 F.2d 1173, 1179 (8th Cir. 1982) (holding an award of antitrust damages for alleged creation and maintenance of an anti-competitive price squeeze did not conflict with regulatory agency's authority to oversee rates because the plaintiffs did not challenge those agency's reasonableness determination)

11. This Court cited Restatement (Second) of Contracts § 205 which states that every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.